BUILDERS MUTUAL CASUALTY COMPANY and another, Appellants, vs. INDUSTRIAL COMMISSION and another, Respondents.

*December 9, 1932—January 10, 1933.*

312

For the appellants there was a brief by *Stephens, Sletteland & Sutherland,* and oral argument by *A. E. Kilmer,* all of Madison.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

Owen, J.   Sec. 102.09 (5) (h), Stats. 1929, provides in part as follows:

"Where injury is caused by the failure of the employer to comply with any statute of the state or any lawful order of the Industrial Commission, . . . compensation and death benefits . . . shall be increased fifteen per cent."

Sec. 101.06 provides in part as follows:

"Every employer shall furnish employment which shall be safe for the employees therein and shall furnish a place of employment which shall be safe for employees therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters."

The principal contention of the plaintiffs is that there is no known way to protect rope being used as the rope of the scaffold in question was being used, from the action of acid; that the order of the commission is substantially the same as the order considered in the case of *Bentley Bros. v. Industrial Comm.* 194 Wis. 610, 217 N. W. 316, where it was held that the award of the commission could not be sustained, and that the fact that the commission in this case based its award on the violation of the statute alone, its order is not distinguishable from that considered in the *Bentley Bros. Case.*   In that case it was said:

"The General Orders of the Industrial Commission heretofore cited indicate that that body has considered the matter of scaffolds.   As a result of such consideration it has prescribed rather comprehensive details of construction which must be observed.   It must be presumed that the commission went as far in prescribing safeguards in the construction of scaffolds as the various employments would reasonably permit.   The attorney general suggested, on oral argument, that there could have been a railing on the side of this plank.

Turning to the orders of the Industrial Commission we find that they require a railing upon certain specified scaffolds, but painters' scaffolds are not specified. There could not be stronger evidence that the Industrial Commission deemed it unreasonable to require a railing on painters' scaffolds."

In this case the commission has made no specifications as to protection of rope being used as was the rope in question, and has still before it the consideration whether the rope should be sheathed or impregnated with some chemical. These facts do not permit the inference that nothing should be done except to give a warning and direction to be careful. The trial court said:

"The plaintiff knew the effect of the acid upon the rope. He of course knew that the rope was no stronger than its weakest point. Under these conditions it was his duty to inspect, by himself or his agents, every part of the rope often enough to discover any part of it which may have become deteriorated by the acid. Such inspection was not at all impossible. No doubt such inspection would even have consumed the time of some one doing it and to that extent a burden upon the industry, but that is a burden which the statute has provided that the industry must bear in order to safeguard the employees. The burden is as nothing when compared with the risk of an employee suspended forty-five to fifty feet in the air."

In this view we concur. The standard test of a rope for the discovery of deterioration is to untwist the rope in reverse and bend it. If it is in good condition it will not break under such test, whereas if it has been affected by the acid it will break. Such a test of this rope after the accident disclosed such a degree of deterioration as that the rope broke in places. The conclusion of the commission that the plaintiff Kelly failed to furnish safety devices and safeguards and to use processes reasonably adequate to render the employment of the deceased reasonably safe, is sustained by the evidence.

*By the Court.*—Judgment affirmed.