DANIELS, Appellant, vs. INDUSTRIAL COMMISSION and another, Respondents.

*November 12—December 8, 1942.*

For the appellant there was a brief by *Brazeau & Graves* of Wisconsin Rapids, and oral argument by *Theo. W. Brazeau.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* .assistant attorney general, and oral argument by *Mr. Levitan.*

FAIRCHILD, J.  The controversy is over the award of fifteen per cent increased compensation.  Sec. 102.57, Stats., provides for such an increase where the injury is caused by the employer's failure to comply with any statute or order of the commission.  Industrial Commission Order No. 56 sets up four approved means to protect window cleaners above the ground floor, and the fifth clause allows "other equally efficient devices."  Appellant did not furnish any of the four specified means of protection but he claims the rope he supplied comes under the fifth·clause as an "equally efficient" device.

The examiner for the commission refused to grant increased compensation on the ground that the injury did not occur because of any violation of the order by the employer.  The commission, with one commissioner dissenting, granted the increased compensation, holding that the rope did not satisfy

the requirements of the fifth clause of order No. 56, and that the injury occurred because of the employer's violation of this order. Appellant alleges that he did not violate the safety order, and that even if he did, this was not the cause of the injury.

In solving the problem presented by this appeal the object sought to be accomplished by the legislation must necessarily be of influence in interpreting the events which are under consideration. The legislative objective is plainly to put upon the employer the duty of providing safety appliances of a certain standard and to penalize those who fail to conform. It is hoped that such a penalty will promote compliance with the regulations. In this case, then, the first question passed upon related to the character of the device. It seems plain that the employer did not comply with the order. The Industrial Commission found that a proper device was not on hand. There was evidence that such a rope was commonly used before the order in question was promulgated, and that it was expressly omitted from the list of approved devices. The finding that the employer did not furnish another equally efficient device was confirmed by the trial court and is supported by substantial, credible evidence and so cannot be set aside.

It is then contended that the supplying of the rope with the possibility of anchoring it securely to some object within the room in some way relieves the employer from the obligation of paying this additional fifteen per cent as directed by the commission's order. The investigation as to the adequacy of such a device shows it to be inefficient. The respondent testified, "I had not used that rope previously;" and he pointed out the disadvantages of using it even assuming it was securely fastened. Bender said, "I could have only fallen whatever distance would be represented by the slack in the rope." He also testified:

"I told him I was afraid to go up, because I did not have a safety device and he suggested a rope at that time. I told him I did not see where the rope would be of much use. He said,

'Go up and wash the windows, because they are dirty and have to be washed.' He told me to take a rope. I knew he was recommending the taking and the use of a rope for the purpose of preventing my falling and injuring myself." ˙

There was evidence of a nature tending to warrant the attitude of respondent with reference to the inadequacy of the rope as a safety device. The failure to provide the safety device of the standard required was a failure to meet the requirements of the statute and the order. The employer cannot complain because the employee failed to use an inefficient and awkward "safeguard." Between that failure and its accompanying penalty and an absolute compliance with the demands of the established rules there is no middle ground. There is no room for an excuse that amounts to setting up contributory negligence or assumption of risk as a defense. Had the employer furnished an approved safety belt, and the employee decided to use a rope, or no device, and had he then been injured, the employee's compensation would be cut fifteen per cent without much question. *Cream City F. Co. v. Industrial Comm.* 188 Wis. 648, 652, 206 N. W. 875. Here the employer failed to furnish the necessary safety device and the compensation is increased fifteen per cent.

Respondent testified:

"I then went to room 249. That has one window. I had the rope around my waist and washed the top section of the room window in 249. Then after I had washed that we tried to use the rope on the lower section and wash that. I had the rope around my waist. When the window was lowered the rope went down to the base of the window and up to John's hand. If you held that taut it would bring the window up and at the same time it wouldn't give you much freedom in holding on to the middle section of the window. It had tension to pull down if the rope was held tight. The window had upper and lower parts. I imagine the upper part could be raised or lowered. I do not know for sure. In washing the upper part I did not lower the upper part. The lower section

could be raised and lowered. It moved inside of the upper section. I was not able to wash the lower part of the room in 249 using that rope because it was a hindrance more than a help. It was in the way. It would pull down. It was tied to the waist and pulled under the window. The lower section when it was pulled down from the waist down to the base of the window and then pulled from John's hand, it had a tendency to pull me downward instead of holding me in one position there. I was not able to wash the window, the lower half, with that arrangement, so I took the rope off and held on to the middle of the window with my finger tips."

Under the circumstances of this case the presence of the rope is canceled by its lack of efficiency plus the requirement that a "safety belt," "a substantial portable platform," "a substantial swinging scaffold equipped with standard handrails, toeboards and life line," "a substantial chair scaffold equipped with a safety belt," or "other equally efficient device" be furnished, and the failure of the respondent to use greater care than he did cannot result in relieving the appellant of the consequences of the breach of the duty that was so plainly placed upon him.

*By the Court.*—Judgment affirmed.