COMBUSTION ENGINEERING COMPANY and another, Respondents, vs. INDUSTRIAL COMMISSION and others, Defendants: FRANKLIN WINNINGHOFF COMPANY and another, Appellants.

*November 19—December 15, 1948.*

For the appellants there was a brief by *Quarles, Spence & Quarles*, attorneys, and *Kenneth P. Grubb* and *Norman C. Skogstad* of counsel, all of Milwaukee, and oral argument by *Mr. Grubb*.

For the respondents there was a brief by *Stroud, Stebbins, Wingert & Young* of Madison, and oral argument by *Byron H. Stebbins*.

FAIRCHILD, J.   It appears that at the time of the accident John Fritz, Jr., was doing the work which Combustion Engineering Company had contracted to do but was being paid by check from Franklin Winninghoff Company.   The Industrial Commission found that he was an employee of Winninghoff but had been loaned to Combustion for that certain job.   The trial court held that Fritz was an employee of Winninghoff and that Winninghoff had contracted with Combustion to furnish the labor for the installation of Combustion's equipment; therefore, at the time of the accident Winninghoff, not Combustion, was the employer.

The problem as to which of two contractors was the employer at the time of the accident has been before this court a number of times.   In those cases four factors have been considered in determining whether the relation of employer-employee exists between a special employer and an employee who has been "loaned" to him:   (1) Did the employee actually or impliedly consent to work for a special employer?

(2) Whose was the work he was performing at the time of the injury? (3) Whose was the right to control the details of the work being performed? (4) For whose benefit primarily was the work being done? *Seaman Body Corp. v. Industrial Comm.* 204 Wis. 157, 235 N. W. 433.

· Applying those tests to the facts of this case we find that Fritz must be held to have been the employee of Combustion at the time of his injury.

(1) There must be a consensual relation between the loaned employee and the borrowing employer to establish a new employee-employer relationship. There must be consent, express or implied, by the employee to working for the new employer. The evidence discloses that Fritz agreed to work for Combustion. Mr. Raml, the union representative, testified: "When I had the conversation with John Fritz and Branak and White I told them that there was some work at the present time at the sewerage-disposal plant and I told them that it was for the purpose of moving heavy machinery. I also explained the arrangement regardless of the fact that they were doing work of moving heavy machinery, which would be Raymond Pulverizer Division's job, they would nevertheless be paid by Mr. Winninghoff, that is by his check. I explained that to Mr. Fritz, Mr. Branak, and Mr. White and they all understood that arrangement. . . . As far as I knew they were doing any and all work required of them just as though they were employed by the Raymond Pulverizer Division, with the exception of getting their checks from Mr. Winninghoff."

(2) At the time of the accident Fritz was working for Combustion. Combustion had a separate contract to install the machinery ·which Fritz and the other men were moving. Winninghoff had nothing to do with that equipment.

(3) The work was done under the sole direction of Mr. Bachman, Combustion's superintendent. Rudolph Branak, one of the workmen, testified: "During the two days before

Johnny Fritz was killed I knew of no one from Winninghoff Company that was on the job. The instructions were given by Mr. Bachman. He made out the time slips."

(4) Combustion had the contract to install this machinery. It consulted Winninghoff to see about obtaining some men to do that work. Winninghoff agreed to get the men and went to the local labor union. Because of the union's objection to two pay checks Winninghoff agreed that the men should be paid through it. The single fact that the reimbursement was more than the wages paid the men is not controlling. The work was still primarily for the benefit of Combustion since it was their contract to install the equipment. Winninghoff's agreement to pay the wages and to be reimbursed by Combustion was more for the accommodation of Combustion than anything else. Mr. Raml, the union agent, testified that one of the reasons the union did not want to make an agreement with Combustion was the difficulty that had been experienced in receiving payment from out-of-state corporations. Winninghoff's part in the matter of arranging the agreement between the union agent acting for the men and Combustion was an accommodation by which Combustion secured the men. The men were working primarily for the benefit of Combustion. The only factor pointing to the conclusion that the work was for the benefit of Winninghoff was the wage differential. This is evidence, but in view of the other facts it is not controlling.

*Visiting Nurse Asso. v. Industrial Comm.* 195 Wis. 159, 217 N. W. 646, *Boehck Equipment Co. v. Industrial Comm.* 246 Wis. 178, 16 N. W. (2d) 298, and similar cases deal with a different type of situation than that presented in this appeal. In those cases the general employer had contracted to furnish services—nursing services or renting excavating machines. There was no question of obtaining workers to do the sole work of the other employer. In both those cases the business

of the general employer was furnishing such services; in the present case Winninghoff was clearly not in the business of supplying to others laborers for heavy-machinery installation. The fact that Winninghoff was to use the men on its job after they finished their work for Combustion would not destroy or overcome the relation between the men and Combustion.

The Industrial Commission also ordered Combustion to pay fifteen per cent increased compensation because of a violation of the safe-place statute. The violation was in using a rope sling to move the machinery instead of chain or cable. The commission found that "had the employer exercised reasonable care and provided the employees with the necessary safe equipment, such as a cable or chain to be used for slings in place of rope which was used, the accident would not have occurred." The evidence shows that the accident occurred when the machine which was being moved slipped and jerked and broke the rope. In view of the evidence the commission's finding must be upheld.

*By the Court.*—Judgment reversed. Cause remanded with directions to reinstate and confirm the order of the Industrial Commission.

FRITZ and HUGHES, JJ., dissent.