WISCONSIN BRIDGE & IRON COMPANY and another, Appellants, v. INDUSTRIAL COMMISSION and another, Respondents.

*November 6—December 1, 1959.*

The cause was submitted for the appellants on the brief of *Fred R. Wright* of Milwaukee, and for the respondent Industrial Commission on the brief of *John W. Reynolds,* attorney general, and *Mortimer Levitan,* assistant attorney general.

DIETERICH, J.   The Wisconsin Bridge & Iron Company contends that it is not subject to the penalty provided in sec. 102.57 or sec. 101.06, Stats., the so-called safe-place statute, for a condition which it did not create, over which it had no control, which it had no authority to alter, change,

or correct, of which it had no knowledge or reason to suspect or believe existed after due inspection of the premises before permitting its workmen to work thereon, and for which it could not have been subjected to a forfeiture under sec. 101.28.

It does not attack the validity of Safety Order No. 3523 or the applicability of the order. It contends that it should be excused from the consequences of violation of the order because it did not create the condition which brought into operation the requirements of Safety Order No. 3523, and that the injury resulted from the negligence or inadvertence of its employee.

The undisputed evidence establishes the violation of the order, and we find no basis for the assumption on the part of the Wisconsin Bridge & Iron Company that it could not be subjected to a forfeiture under sec. 101.28, Stats., and the 15 per cent additional compensation under sec. 102.57.

See *Karges v. Industrial Comm.* (1917), 166 Wis. 69, 162 N. W. 482; *Fritschler v. Industrial Comm.* (1932), 209 Wis. 588, 245 N. W. 669; *Builders Mut. Casualty Co. v. Industrial Comm.* (1933), 210 Wis. 311, 246 N. W. 313; and *Williams v. International Oil Co.* (1954), 267 Wis. 227, 64 N. W. (2d) 817.

Sec. 102.57, Stats., provides:

"VIOLATIONS OF SAFETY PROVISIONS, PENALTY. Where injury is caused by the failure of the employer to comply with any statute or any lawful order of the commission, compensation and death benefits as provided in this chapter shall be increased 15 per cent. Failure of an employer reasonably to enforce compliance by employees with such statute or order of the commission shall constitute failure by the employer to comply with such statute or order."

Burt Downing, employed by the Wisconsin Bridge & Iron Company, was told by his foreman on the morning of

December 14, 1955, that he should put up flashing, fill off the new roof onto the old roof so that the roofers could finish the roofing. The new roof was a little bit higher than the old, and the flashing was necessary so the roofers could join the two roofs together.

A portion of the roof on which Downing was assigned to work had been removed by the general contractor's employees. This left an opening about six feet wide and 80 feet long, running the width of the building, and the opening had been covered with canvas nailed to some boards. No inclosures, guardrails, or toeboards had been placed around the opening.

*Safety Orders Involved.*

Safety Order No. 3501, now 3 Wis. Adm. Code, sec. Ind 35.01, provides:

*"Responsibility for provision and maintenance of safeguards.* The responsibility for the provision and maintenance of the protection for a workman required under this code rests with his immediate employer, unless this responsibility is otherwise definitely assigned in the specifications or contract, and properly executed by the assignee."

Safety Order No. 3503, now 3 Wis. Adm. Code, sec. Ind 35.03, provides:

*"Guard railing.* A guard railing shall have a vertical height of 42 inches from the floor or platform to the upper surface of the top rail. An intermediate rail shall be provided midway between the floor or platform and the under side of the top rail."

Safety Order No. 3504, now 3 Wis. Adm. Code, sec. Ind 35.04, provides:

*"Toeboard.* A toeboard shall consist of a wood board not less than nominal 1 x 6 inches resting edgewise on the

working floor or platform, fastened and braced in place. Metal or plywood toeboards of equal height and strength may also be used."

Safety Order No. 3523, now 3 Wis. Adm. Code, sec. Ind 35.23, provides:

*"Protection of openings in floors and roofs.* (1) Every opening in a floor, or roof, whether such floor or roof is temporary or permanent, shall be inclosed with a guard railing as described in sec. Ind 35.03 and with toeboards as described in sec. Ind 35.04. Such railing and toeboards shall be constructed immediately after the floor around the opening is constructed and shall be left in place until the permanent inclosure is installed.

"(2) The requirement for guarding a floor or roof opening can be avoided only by closing the opening by means of solid construction as required for scaffold platforms under sec. Ind 35.13. Such cover shall be fastened in place, or cleated to fit the opening, to prevent shifting."

The statutes and orders placed the responsibility for provision and maintenance of safeguards on the immediate employer. The only way in which the immediate employer could escape the obligations was by definitely assigning the responsibility in the specifications or contract, and then only if the assignee properly executed that responsibility.

The agreement between the general contractor and the Wisconsin Bridge & Iron Company contained nothing which obligated the general contractor to comply with the safety orders.

The provisions in 3 Wis. Adm. Code, sec. Ind 35.01, places the responsibility for compliance upon the Wisconsin Bridge & Iron Company as the employer of Downing.

It was the responsibility of the Wisconsin Bridge & Iron Company to determine whether the roof was a reasonably safe place to work before permitting two of its employees to work there. Mr. Jack Walters, superintendent for the Wis-

consin Bridge & Iron Company and who directed Downing to work on the roof on the day of the accident, had been on the roof of the building that morning. The following questions were asked of him:

"*Q.* Was there anything to indicate that there was an opening there that was covered by just a canvas? *A.* Well, I'd say it appeared it was covered, yes, but I didn't know it was a hazard. I don't know what was under. There was snow. You could tell what it was, and I didn't know it was a hazard. I didn't know it was anything that a man couldn't walk on. . . .

"*Q.* From your examination then, did you have the impression that it was just one flat roof? *A.* Well, I couldn't say that because it was inclosed, the tarps were hung down over the front of the building for some reason to keep in the cold. So I couldn't say that; I didn't know the slabs was under. I don't know whether it was planks or slabs. I couldn't say. I wasn't underneath to see.

"*Q.* With that hanging down in front you knew there was canvas on the top? *A.* Yes, well, it had to be on there to hold the front on there. It was hanging on down over the front. There had to be some on top to hold it up there."

He further testified that he could not see what was under the canvas, but that the next morning he examined it and he answered "that was too late." He also testified that on the morning of the accident he had only been there a few minutes and "to tell the truth, I didn't notice, you know, the rise in it and didn't pay much attention because I wasn't there just a few minutes in the morning."

The safe-place statute requires the employer, and imposes a duty upon it, to anticipate what the premises will be used for and to inspect them to make sure they are safe. The burden to investigate or inspect premises in order that they be safe for employment may be burdensome at times upon an employer, but it does not excuse it from the duty so imposed upon it by the safe-place statute, and a failure to

comply renders it liable for the violation of a safety order or the safe-place statute. An employer is chargeable with knowledge of conditions created by workmen from crews other than that of the injured employee. The question of whether the Wisconsin Bridge & Iron Company was negligent in the performance of that duty presented an issue of fact for the commission. The Industrial Commission found that the Wisconsin Bridge & Iron Company had violated Safety Order No. 3523, and increased the compensation 15 per cent pursuant to sec. 102.57, Stats.

The testimony of Jack Walters, superintendent of construction, discloses that his investigation was brief, lasted only a few minutes and that he did not notice any irregularities in the surface of the roof or any rise in the roof which was covered by the canvas. His excuse for not doing so was that he did not know it was a hazard, that the roof appeared solid to him, and that he thought a man could walk on it.

See *Builders Mut. Casualty Co. v. Industrial Comm., supra; Neitzke v. Kraft-Phenix Dairies, Inc.* (1934), 214 Wis. 441, 253 N. W. 579; *Daniels v. Industrial Comm.* (1942), 241 Wis. 649, 6 N. W. (2d) 640; *Saxhaug v. Forsyth Leather Co.* (1948), 252 Wis. 376, 31 N. W. (2d) 589; *Wannmacher v. Baldauf Corp.* (1952, 1953), 262 Wis. 523, 55 N. W. (2d) 895, 57 N. W. (2d) 745; *Frankovis v. Klug & Smith Co.* (1957), 275 Wis. 156, 81 N. W. (2d) 495; and *Connor Lumber & Land Co. v. Industrial Comm.* (1959), 6 Wis. (2d) 171, 94 N. W. (2d) 145.

The findings of the Industrial Commission are supported by substantial credible evidence in the record so as to satisfy the commission's burden of proof as to the violation of Safety Order No. 3523, and the judgment of the circuit court is affirmed.

*By the Court.*—Judgment affirmed.