EAU CLAIRE ELECTRIC CO-OPERATIVE, Appellant, v. INDUSTRIAL COMMISSION and others, Respondents.

*March 11—April 5, 1960.*

For the appellant there was a brief and oral argument by *Darrell O. Hibbard* of Eau Claire.

For the respondent Industrial Commission the cause was argued by *Mortimer Levitan,* assistant attorney general, with whom on the brief was *John W. Reynolds,* attorney general.

FAIRCHILD, J.   The only issue in the proceeding before the commission was whether compensation admittedly due is to be increased by 15 per cent under the provisions of sec. 102.57, Stats.   That section provides in part:

"Where injury is caused by the failure of the employer to comply with any statute or any lawful order of the commission, compensation and death benefits as provided in this chapter shall be increased 15 per cent."

The record discloses that the foreman directed Gunnes to work in a place and under conditions which were dangerous, but which the foreman mistakenly believed safe.   The foreman's mistake resulted from relying upon his observation of the place where the line was to be de-energized when his vision was partially obstructed by trees.   The examiner and the commission found that this procedure was not a method or process reasonably adequate to render the employment safe, and we must agree that the evidence supports this finding.

Sec. 101.06, Stats., provides:

"Every employer shall furnish employment which shall be safe for the employees therein and shall furnish a place of employment which shall be safe for employees therein . . . and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reason-

ably necessary to protect the life, health, safety, and welfare of such employees . . ."

While the examiner's order did not refer to sec. 101.07 (1), Stats., a portion of it should also be noted, as follows:

"No employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe, . . . and no such employer shall fail or neglect to do every other thing reasonably necessary to protect the life, health, safety, or welfare of such employees . . ."

Plaintiff's principal attack upon the award of increased compensation is that the mistake from which the danger arose was negligence or human error of an employee, the foreman. Plaintiff relies upon several decisions holding, or suggesting, that where an employee's injury is caused by momentary lack of compliance with a safety statute or order resulting from the unanticipated negligence of a fellow employee, such lack of compliance is not "failure of the employer to comply" within the meaning of sec. 102.57, Stats.

One of the cases relied upon by plaintiff is *Saxe Operating Corp. v. Industrial Comm.* (1929), 197 Wis. 552, 222 N. W. 781. In this case, an employee was killed while attempting to enter an elevator after it had started, but before the operator had completely closed the doors. The commission awarded 15 per cent increased compensation upon the finding that the death was caused by the failure of the employer to comply with an order requiring that the doors must be closed and locked before the car leaves the landing. This court held that the order in question did not deal with erection, construction, or equipment of the employer's physical plant, but with the element of negligence or want of ordinary care on the part of the elevator operator, and that such an order was not authorized by sec.

101.10 (4), Stats., as construed by the court. The court said, at page 554, that the legislature had given "the commission full power to deal with the plant—with the inanimate objects that determine whether a place of employment is safe." The court said further that it was not the legislative intent to subject employers to the penalty of increased compensation in every case where an employee is injured through the negligence of a fellow employee, and that the intent was (p. 555)—

". . . to impose this added compensation in the nature of a penalty where the employer has permitted his physical plant to be operated in such condition that it fails to comply with any statute of this state or any lawful order of the Industrial Commission. In the case of a physical plant, the employer is chargeable with notice of the conditions that prevail in the plant which generally remain fixed and unchanging. But he cannot know in advance of the conditions which may be produced by the negligent or inadvertent acts of his employees."

Another case relied upon is *L. G. Arnold, Inc., v. Industrial Comm.* (1954), 267 Wis. 521, 66 N. W. (2d) 176. There, workmen were injured while they were steadying beams being carried down a public street by a crane, and when the operator "carelessly swung the boom of the crane to the east and struck the power lines." This court decided that the operation being performed gave the employer no warning of the negligent act of the crane operator, and that the award of increased compensation was improper.

The third case is *Wisconsin Bridge & Iron Co. v. Industrial Comm.* (1956), 273 Wis. 266, 77 N. W. (2d) 413. Here an employee was electrocuted. He was connecting a cable to a beam when the boom holding the cable came in contact with electric wires. The safety order of the commission required that movable equipment used in connection with a construction project shall maintain at least a specified

amount of clearance from electrical conductors. The court, at page 269, held that the evidence clearly presented "the probability that the accident occurred through the negligence of the crane operator. . . . It is well established that an employer may not be subjected to a penalty where the injury is the result of negligent or inadvertent acts of its employees."

It was noted in the opinion, however, at page 270, that:

"The placing of the crane, which the foreman was responsible for, was not such as required the boom to be extended into the proscribed area. . . . There is no evidence that the operator was directed by the foreman to raise the boom into the proscribed limits of clearance. When the boom did come into contact with the wire, therefore, it was a momentary departure from the established method of operation fixed by the employer—a circumstance as compatible with the operator's negligence as the employer's failure to comply with the safety order."

Referring to the order, the court said, at page 271:

"But it cannot be said to be violated unless there is evidence tending to show that location of the crane, in the light of the work to be done, required extension of the boom into the prohibited area."

The three decisions just cited do not mean that the employer is not to be held responsible under sec. 102.57, Stats., for the failure of a supervisory employee to use reasonably adequate methods and processes to make safe the employment and place of employment, control over which has been delegated to him. On the contrary, the statements just quoted from pages 270 and 271 of the *Wisconsin Bridge & Iron Co. Case* suggest that had the foreman directed the operator to move the boom in violation of the order, the action of the foreman would have bound the employer.

The definition of "employer" in sec. 101.01 (3), Stats., indicates that the legislature intended that the duties im-

posed upon the proprietor by sec. 101.06 were also imposed upon a person to whom the proprietor had delegated control of its employees.

Sec. 101.01 (3), Stats., provides:

"The term 'employer' shall mean and include every person, firm, corporation, . . . as well as any agent, manager, representative, or other person having control or custody of any employment, place of employment, or of any employee."

In a recent case, this court upheld an imposition of increased compensation based, in effect, upon failure of the employer's superintendent to make a sufficient examination of a place of employment to determine the presence of a dangerous condition. *Wisconsin Bridge & Iron Co. v. Industrial Comm.* (1959), 8 Wis. (2d) 612, 99 N. W. (2d) 817. The employer was installing some materials on the roof of a building owned by another. We held that it was the employer's responsibility to determine whether the roof was a reasonably safe place to work before permitting its employees to work there. The superintendent made an inspection but failed to discover an improperly guarded opening in the roof. An employee was injured by a fall through the opening and increased compensation was awarded, and upheld.

There is no question of the power of the commission in a proper case to order increased compensation upon a finding of violation of the safe-place statute itself without finding the violation of any particular safety order. *Builders Mut. Casualty Co. v. Industrial Comm.* (1933), 210 Wis. 311, 246 N. W. 313; *Combustion Engineering Co. v. Industrial Comm.* (1948), 254 Wis. 167, 173, 35 N. W. (2d) 317.

It should also be noted that sec. 101.06, the safe-place statute, requires more than the provision of a safe place of employment. It also requires that the employer shall furnish safe employment. Some discussion of the greater breadth

of the requirement that safe employment be furnished appears in *Miller v. Paine Lumber Co.* (1930), 202 Wis. 77, 227 N. W. 933, 230 N. W. 702. The court said (pp. 90, 91):

"It is apparent that 'safe employment' is broader in scope than a safe 'place of employment.' In fact, safe employment necessarily requires a safe place of employment. . . .

"A moment's reflection will indicate that a safe employment may require something besides a place of employment that is safe in a physical sense. To illustrate, it is not inconceivable that to render safe the employment of a track repairer in switching yards may require a warning of the approach of switching engines and cars. This has no relation to the physical conditions under which he is working, but may be absolutely necessary to make his employment safe. Safety of employees working upon a building where materials are being hoisted and moved about may require signals to advise them of and to guard them against movements dangerous to them of which they would not otherwise be apprised. Illustrations such as this could be multiplied to indicate that under myriad situations safe employment calls for something in addition to a safe place of employment in a physical sense. . . .

"We therefore hold that this statute does impose upon employers the duty to warn employees of dangers incident to their employment, not absolutely, but when it is 'reasonably necessary to protect the life, health, safety, and welfare of such employees.' "

We conclude that the failure of the foreman to follow a better method for ascertaining that the line had been de-energized before assuring the injured employee that it was de-energized and directing him to proceed with his work was a sufficient basis for awarding increased compensation under sec. 102.57, Stats.

Plaintiff next argues that Gunnes would not have been injured had he used insulated gloves and installed temporary grounds for his own protection; that instructions of plaintiff and certain safety orders of the commission required him to

use one or both of these methods of protection notwithstanding the assumed fact that the line was de-energized. Although the use of these devices by Gunnes probably would have prevented or reduced the injury, and in that sense his failure to use them may have been a contributing cause of his injury; nevertheless, the employer's failure was also a substantial cause of the injury. The statutes nowhere provide that the employer is to be exempted from the increased-compensation penalty provided by sec. 102.57, Stats., if the injury could have been avoided by compliance by the employee with all instructions and orders. In fact, sec. 102.57 also provides that, "Failure of an employer reasonably to enforce compliance by employees with such statute or order of the commission shall constitute failure by the employer to comply with such statute or order."

Another statute, sec. 102.58, Stats., provides for the reduction of compensation by 15 per cent where injury is caused by the wilful failure of the employee to use required safety devices. It has not been contended here that Gunnes' failure was "wilful;" no finding to that effect was made by the examiner or commission, and the record does not compel such a finding as a matter of law, particularly where the employee testified that in failing to use them, he relied on the foreman's assurance that the line had been de-energized.

Certain other questions have been argued here. (1) In effect, whether Safety Orders 1411 (e) and 1421 (b) were in excess of the authority of the commission; and (2) whether, if plaintiff violated identical orders adopted by the public service commission as part of the state electrical code, it also violated sec. 167.16, Stats., applicable to a "contractor and other person who does any electric wiring."

Because of our conclusion that the evidence sustains the finding that plaintiff failed to comply with sec. 101.06, Stats., it is unnecessary to decide the other questions.

*By the Court.*—Judgment affirmed.