350 P.2d 1037

Leon **DICKERSON**, Claimant, Plaintiff-Appellee and Cross-Appellant,

v.

**FARMER'S ELECTRIC COOP., INC.,** Employer, and **United States Fidelity & Guaranty Company,** Insurer, Defendants-Appellants and Cross-Appellees.

No. 6639.

Supreme Court of New Mexico.

April 6, 1960.

Smith, Smith & Tharp, Hartley, Buzzard & Patton, Clovis, Keleher & McLeod, Russell Moore, Albuquerque, for appellants.

Smith, Kiker & Kitts, Albuquerque, for appellee.

COMPTON, Justice.

Appellee brought this action for compensation under the provisions of the Workmen's Compensation Act as a result of injuries sustained by him while removing a transformer from a pole on which there were energized wires carrying a current of 2300 volts of electricity.

The accident occurred February 1, 1958, while appellee was employed as a lineman

for Farmer's Electric Coop., Inc. He was thereafter paid on a total disability basis for two months, at which time his payments were arbitrarily reduced 50% because he had failed to use "a provided safety device" supplied by his employer in the performance of his work.

Thereupon, appellee instituted this action to recover compensation for total and permanent disability by reason of the injuries thus sustained and, further, for an increase in compensation by 50% because of the employer's negligence in not providing a reasonable safety device in general use in the electrical industry, "properly insulated gloves." Appellants' answer contains admissions and denials. They admitted the employment, injury and wages, but denied other matters. As an affirmative answer, they alleged that appellee had been supplied "a pair of insulated gloves with which to handle electric wiring with safety"; that the injuries sustained resulted from his failure to use them, and that claimant's compensation should be reduced by 50% for such failure. On the issues thus presented, the cause was tried to the court and, from a judgment for claimant, the employer and the insurance carrier appeal.

The employer had supplied appellee with a pair of gloves and, while in the act of removing the transformer, without using them, appellee's right hand contacted a "hot wire," causing severe burns, ultimate-ly resulting in the amputation of the right hand, besides serious injury to his left knee. It was stipulated that his disability was total and permanent as of that time, leaving for a determination only the safety device aspect of the case.

■ The pertinent provisions of the applicable statute, § 59–10–7, 1953 Comp., as amended, read:

"In case an injury to * * * a workman results from his failure * * to use a safety device provided by his employer, then the compensation otherwise payable under the Workmen's Compensation Act shall be reduced by fifty (50%) per centum. * * * If an injury to * * * a workman results from the negligence of the employer in failing to supply reasonable safety devices in general use for the use or protection of the workman, then the compensation otherwise payable under the Workmen's Compensation Act shall be increased by fifty (50%) per centum."

■ For the employer to avoid liability under the act, the safety device provided must be one generally used in the particular industry. The decisive question, therefore, is whether the pair of gloves supplied by him met that test. On the narrow issue presented, the question must be resolved against the employer. The uncontroverted evidence is that the safety de-

vice in general use in the electrical industry for the protection of its linemen, such as appellee, is a pair of rubber insulated gloves which will withstand 15,000 volts of electricity for a duration of three minutes and, which under the employer's self-imposed regulation, had been tested within 90 days. When tested, shortly after the accident, the last test having been made 208 days before the accident, the right-hand glove withstood the test; the left-hand glove failed the test, but to no great extent. Consequently, the gloves having failed the test, which was long overdue on the date of the accident, they cannot be classified as a safety device in "general use" in the electrical industry. Wright v. Schultz, 55 N.M. 261, 231 P.2d 937; Hamilton v. Doty, 65 N.M. 270, 335 P.2d 1067, 1069. In Hamilton v. Doty, supra, we said:

> "We think the term 'in general use' manifests a clear legislative intent to completely eliminate any contention or controversy as to whether some other device may be substituted. To avoid liability under the Act, the device provided must be one generally used in the particular industry."

Compare Daniels v. Industrial Commission, 241 Wis. 649, 6 N.W.2d 640; Wick v. Gunn, 66 Okl. 316, 169 P. 1087, 4 A.L.R. 107. Also see Christensen v. Dysart, 42 N.M. 107, 76 P.2d 1; Great Western Power Co. v. Pillsbury, 170 Cal. 180, 149 P. 35, where the "wilful misconduct" of the workman was at issue. We have no such issue here.

The trial court found that the employer's negligence in failing to supply a reasonable safety device in general use in the electrical industry was the "proximate cause" of the injury, and appellants argue that the finding is without support in the evidence. This argument requires but little consideration. The failure to supply the safety device is proscribed as negligence, and the statute fixes the penalty therefor. Hamilton v. Doty, supra; Wright v. Schultz, supra.

Appellants advance the proposition that if appellee had been wearing the gloves supplied by the employer, the accident would not have happened. Even so, the position is untenable. A device less than the safety device used generally in the particular industry may not be substituted therefor. Hamilton v. Doty, supra.

Claimant cross-appeals from the award of attorney fees. The lower court fixed the sum of $750 as a reasonable amount, and we are asked to increase that award. Ordinarily, the fixing of attorney fees in compensation cases in the lower court is a matter within the province of the trial court, but the facts here convince us that the fee allowed is too low. The potential compensation which appellee will receive is $16,500 and, in view of the nature of his injuries, a material change

in the award appears quite remote. Con-sequently, we will increase the fee in the lower court to $2,000 and allow him an additional fee of $750 for the services of his attorney in representing him in this court.

The judgment should be affirmed, and it is so ordered.

McGHEE, C. J., and CARMODY, MOISE, and CHAVEZ, JJ., concur.