VAN SLUYS, Appellant, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS and another, Respondents.

*February 27—April 9, 1968.*

For the appellant there was a brief and oral argument by *Wayne W. Schlosser* of Sheboygan.

For the respondent Department of Industry, Labor & Human Relations the cause was argued by *Roy G. Mita,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HANLEY, J.   The plaintiff, the appellant here and the applicant before the ILHR, was injured while in the employ of Great Lakes Homes, Inc., as a shipping foreman. His duties as shipping foreman did not usually occupy his entire work day, and on such occasions he was expected to help out in the receiving department. On October 1, 1963, the date of his injury, plaintiff was working in the receiving department, assisting in the un-

loading of thermopane windows from a semitrailer. The thermopanes were packaged in wooden crates, six or seven to a crate, secured in position by being nailed with heavy pieces of lumber and blocking. The crates were about seven and one-half feet long, five feet high and 10 inches thick. Each weighed over 1,000 pounds. According to the plaintiff and to Roger Sterkel, a co-worker, the crates were positioned crosswise in the semitrailer so that they stood five feet high.

The semitrailer was an old one, without a top and with holes in its platform through which one could look down and view the surface beneath. It was backed up to the loading dock, facing east. Its platform was at least several inches higher than the dock. A steel plate, about six feet wide and seven feet long, was used to bridge the difference in height. It overlapped the rear of the platform by about three inches, protruding above it at least two or three inches.

The first crate to be unloaded was from eight to 10 feet from the rear of the truck. The strategy was to move the crate 90 degrees to a lengthwise position so that a chain could be put under and around it, whereupon a forklift would carry the crate off the platform, its prongs inserted through the chain at the top of the crate.

To accomplish moving the crate to a lengthwise position, a pipe was first placed under its north end and a block placed under the pipe. The crate was then pried up at that end so that the prongs of the forklift could be placed under the crate. The forklift was then to be backed up until the crate was lengthwise in the truck. No chain was used at this stage in the operation; the testimony was that it was not possible to put the chain on until the crate was lengthwise in the truck.

The accident occurred after the crate was pried up and the forklift prongs were placed under the crates. The forklift was backing up so that the crate had been moved 45 degrees when the crate fell toward the north side of

the truck and struck the plaintiff who was helping to balance the load.

Three witnesses testified as to what caused the crate to fall, the plaintiff, Roger Sterkel, a co-worker who was helping to balance the crate on the other side of the truck, and Thomas Thompson, the driver of the forklift. The plaintiff's testimony was that the crate tipped over because the forklift either dropped off the platform, hit one of the holes in the platform, or dropped off the steel plate. He did not actually see what happened. On direct examination, Thompson testified that he "believed" his forklift hit the steel plate with the rear wheels, which caused the lift to jump with the result that the crate was thrown. On cross-examination his statement was positive, but he did not actually see the wheels hit the plate, although he felt the jar. Sterkel testified that he could see the forks underneath the crate starting to slip. This caused him to shout a warning; but the warning went unheeded. Immediately thereafter there was a sudden jolt causing the back end of the forklift to raise up and the forks on the front end to go down. The crate tipped over on its side toward the north wall of the truck. Sterkel did not know what caused the jolt. All three testified the crate tipped and did not slip off the lift.

The department's finding was as follows:

"That the applicant sustained injury when a crate of Thermopanes slipped off a forklift truck and struck his leg; that the crate slipped because the crate did not move [sic] the fork as the forklift truck commenced to back up; that the method and process used by the employer in the performance of the work was reasonably adequate to render such employment and place of employment safe; that the employer did not fail to do such things as were reasonably necessary to protect the safety of the employee."

Plaintiff's sole contention on this appeal is that his employer's violation of the safe-place statute caused his

injuries as a matter of law, thus entitling him to the 15 percent increased compensation award. In support of this contention he argues that the department's finding that the crate slipped off the forks is not supported by the evidence, that the crate was jarred off the forks as a consequence of the unsafe method of unloading and of the faulty and inadequate equipment used.

It is evident that under sec. 102.57, Stats., the unsafe condition must have caused the accident if the penalty is to be imposed. While there is no credible evidence to support the department's finding that the crate slipped off the forklift, the testimony linking the accident to a violation of the safe-place statute is conjectural. The plaintiff testified that one of several things could have caused the crate to tip and that he did not know what the cause was. Sterkel testified that he did not know. Thompson's testimony on direct examination was that he "believed" the forklift hit the steel plate; on cross-examination his testimony was positive, but he admitted that he did not see what happened.

Even if it is assumed that the conditions under which the unloading took place amounted to a violation of the safe-place statute,[2] plaintiff has not established what condition caused the accident. On the record it would be speculation for the commission to attribute the accident to any one of the several alleged defects.

It has not been proved that the holes in the floor of the semitrailer, the slippery prongs, or the difference in elevation of the steel plate bridging the floor of the semitrailer and the unloading dock caused the accident. It would be as easy to speculate that it was caused by the

---

[2] In *Presti v. O'Donahue* (1964), 25 Wis. 2d 594, 131 N. W. 2d 273, the court stated that on the basis of expert testimony the *jury could decide* that a steel plate used as a ramp in the unloading of a truck caused the plaintiff's injuries, and that, at page 599, "They could have considered the relatively low cost at which a more efficient and safer dockboard might have been provided."

manner in which the forklift was operated as well as any of the above–stated reasons.

"There is no question of the power of the commission in a proper case to order increased compensation upon a finding of violation of the safe-place statute itself without finding the violation of any particular safety order." *Eau Claire Electric Co-op. v. Industrial Comm.* (1960), 10 Wis. 2d 209, 217, 102 N. W. 2d 274.

However, mere violation of the safe-place statute does not sustain an award of 15 percent increased compensation. Applicant must show that the violation was the cause of the accident. *Wm. Esser & Co. v. Industrial Comm.* (1926), 191 Wis. 473, 211 N. W. 150.

In the instant case there is no presumption that the damage resulted from or was caused by failure to comply with the safe-place statute, and the plaintiff has not met the burden of proof of causation.

We conclude that the judgment of the circuit court confirming the order of the department must be affirmed.

*By the Court.*—Judgment affirmed.