RTE CORPORATION, Plaintiff-Appellant, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, and another, Defendants-Respondents.

Supreme Court

*No. 76–371. Submitted on briefs January 9, 1979.— Decided March 27, 1979.*
(Also reported in 276 N.W.2d 290.)

For the appellant the cause was submitted on the brief of *Erwin Esser Nemmers* of Chicago, Illinois.

For the respondent, Department of Industry, Labor and Human Relations, the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Gordon Samuelsen,* assistant attorney general.

CONNOR T. HANSEN, J.   This is an appeal from a judgment entered November 1, 1976, by the circuit court for Dane county, the Hon. MICHAEL B. TORPHY, JR., presiding, confirming an order of the Department of Industry, Labor and Human Relations, dated April 10, 1975 directing RTE Corporation to pay fifteen percent

increased compensation to Arlene C. Zenefski, widow of the deceased, under sec. 102.57, Stats. 1973.[1]

The question as framed by the parties is:

IS THERE CREDIBLE EVIDENCE TO SUSTAIN THE FINDINGS OF DILHR THAT THE FATAL INJURY TO RICHARD ZENEFSKI WAS CAUSED BY THE FAILURE OF THE EMPLOYER TO COMPLY WITH ORDERS IND 1.15 AND IND 54.07,[2] WISCON-

[1] "102.57 **Violations of safety provisions, penalty.** Where injury is caused by the failure of the employer to comply with any statute or any lawful order of the department, compensation and death benefits as provided in this chapter shall be increased 15% but not more than a total increase of $7,500. Failure of an employer reasonably to enforce compliance by employes with such statute or order of the department shall constitute failure by the employer to comply with such statute or order."

[2] "*Ind 1.15 Doorways near railway tracks and driveways.* (1) When a doorway or corner of a building is located near a railway, trolley track or driveway, so that a person is likely to walk into the path of any moving vehicle, a barrier shall be installed as follows:

"(a) A swinging barrier located at the door opening or corner, extending across the doorway or from the corner, or

"(b) A fixed barrier situated outside the building parallel to the door opening and approximately 36 inches away from it, or,

"(c) A fixed barrier situated at the corner parallel to the tracks or driveway and extending for a distance of not less than 6 feet outward from the corner, or,

"(d) Any other equally effective devices."

"*Ind 54.07 Passageways.* Where there is not direct access to outside exit doors, safe and continuous passageways, aisles or corridors leading directly to every exit shall be maintained at all times on all floors of all buildings. Every passageway, aisle or corridor shall conform in width to the rule for width of stairways as specified in section Ind. 54.04. Widths shall be measured in the clear, at their narrowest points produced by any projection, radiator, pipe or other object and the required width shall be maintained clear and unobstructed at all times."

SIN ADMINISTRATIVE CODE AND THE SAFE PLACE STATUTE,[3] 101.11, Stats. 1973?

Because we conclude that there was credible evidence to sustain a violation of safety order 1.15 of the department we do not reach the issue of whether the Safe Place Statute was violated. Accordingly we affirm.

On March 14, 1974, Richard Zenefski was employed by the RTE Corporation, a manufacturer of transformers in Waukesha, Wisconsin. On that date, RTE's premises contained a general storage room approximately fifty feet by one hundred feet. Along the west wall, also called the fire wall, there was an aisle or passageway from eighty-four to 104 inches wide, formed by the fire wall on the west side and the ends of the storage racks

[3] "101.11. **Employer's duty to furnish safe employment and place.** (1) Every employer shall furnish employment which shall be safe for the employes therein and shall furnish a place of employment which shall be safe for employes therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employes and frequenters. Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or public building as to render the same safe.

"(2) (a) No employer shall require, permit or suffer any employe to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide and use safety devices and safeguards, or fail to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe, and no such employer shall fail or neglect to do every other thing reasonably necessary to protect the life, health, safety or welfare of such employes and frequenters; and no employer or owner, or other person shall hereafter construct or occupy or maintain any place of employment, or public building, that is not safe, nor prepare plans which shall fail to provide for making the same safe."

which stood at right angles to the aisle, on the east side. The racks were used to store transformer tanks. The tanks were taken off and placed on the racks by means of a forklift truck which at the time of the accident was operated by Alan Wendt. Another forklift truck, driven by David Hansen, would transport the tanks from place to place within the area and to other parts of the employer's premises. Because of the width of the aisles between the racks, it was not practical for the forklift trucks to turn around, so Mr. Hansen would drive his truck straight into an aisle and then back it out in order to return to the long aisle along the fire wall. From zero to five persons would walk through the storage area on a given eight hour shift.

There was an exit door in the fire wall that opened into the aisle along the fire wall. On the day of the accident, Mr. Zenefski entered the storage room through another door in the east wall at the northern end of the area. He walked between two storage racks and then turned south into the long aisle along the fire wall.

As Mr. Zenefski approached the door in the fire wall, Hansen was backing his forklift truck out of the aisle between the fourth and fifth storage racks with a transformer tank loaded on the forks. In order to head south along the fire wall, Hansen began backing out northward into the west aisle. When he began to back up, he looked back once, and Mr. Zenefski was not then visible. Then he looked forward to avoid striking the corner of the storage rack with the forks as he swung out. At no time did Hansen sound the forklift horn, although his truck was equipped with such a horn. Zenefski was struck by the truck as he was attempting to go through the door.

Hansen heard the back of the truck scrape the fire wall, so he turned around and found Zenefski lying on the floor near the door. The door was open when

Hansen saw Zenefski lying on the floor. It had been closed the first time Hansen had turned around. Wendt heard Zenefski scream when he was struck. Zenefski died of internal injuries at the hospital. Although Zenefski had previously been a cardiac patient, a post mortem ruled out cardiac trouble as the cause of death.

At the hearing, the only question before the examiner was whether the company should pay fifteen percent extra compensation to the widow because the injury resulted from a violation of the safe place statute or a DILHR safety order. The company had already conceded that death had arisen out of employment. The hearing examiner concluded violations of the safe place statute (Sec. 101.11, Stats.) and two commission safety orders were substantial factors in causing Zenefski's injuries and ordered increased compensation. The examiner did not base his finding on the federal Occupational Safety and Health Act (OSHA) regulations. The circuit court confirmed the award, and the company appeals.

Sec. 102.57, Stats. 1973 subjects an employer to liability for additional compensation and death benefits under the Worker's Compensation Act where injury is caused by the employer's failure to comply with any statute or any lawful order of DILHR.

Whether there has been a failure to comply with a statute or lawful order of DILHR presents a question of fact for the department, whose findings are conclusive if supported by any credible evidence. *Hipke v. Industrial Commission,* 261 Wis. 226, 231, 52 N.W.2d 401 (1952).

The hearing examiner found that failure to comply with Ind 1.15 and Ind 54.07 of the Wisconsin Admin-

istrative Code was a substantial factor in causing Mr. Zenefski's injuries. The employer argues that assuming that there was evidence that these code rules had been violated, there was no showing that the violations caused the injuries. The causal connection between injury and a violation of a safety order may be presumed when the injury is such as the order is intended to prevent. *Wisconsin Bridge & Iron Co. v. Industrial Comm.*, 273 Wis. 266, 271, 77 N.W.2d 413 (1956). Thus, two questions are presented: 1) was the injury of the type sought to be prevented by the order, and 2) was there evidence that the order was violated?

Ind 1.15 provides:

*"Ind 1.15 Doorways near railway tracks and driveways.* (1) When a doorway or corner of a building is located near a railway, trolley track or driveway, so that a person is likely to walk into the path of any moving vehicle, a barrier shall be installed as follows:

"(a) A swinging barrier located at the door opening or corner, extending across the doorway or from the corner, or,

"(b) A fixed barrier situated outside the building parallel to the door opening and approximately 36 inches away from it, or,

"(c) A fixed barrier situated at the corner parallel to the tracks or driveway and extending for a distance of not less than 6 feet outward from the corner, or,

"(d) Any other equally effective devices."

The employer claims that Ind 1.15 applies only to doorways leading outside the building. It rests its argument on the language in Ind 1.15 (1) (b) which requires a fixed barrier *outside the building.* However, the general topic in paragraph (1) is protection of persons likely to walk into the path of any moving vehicle "[w]hen a doorway or the corner of a building is located near a railway, trolley track, or driveway."

The hearing examiner found: "that the aisle along the fire wall constituted a 'driveway' within the meaning of

Wisconsin Administrative Code Rule 1.15; that the doorway opposite rack four was located near such driveway so that a person was likely to walk into the path of a moving vehicle; that although the area east of the fire wall was not 'outside' the building; (1) (b) and (d) of such rule, when read together, require a fixed barrier in the aisle parallel to the door opening and thirty-six inches east of it; that had such a barrier been provided by the employer, in all probability the above described injury would not have been sustained by the deceased, and the violation of Rule 1.15 constitutes a substantial factor in causing such injury."

In construing a rule, great consideration should be given to the harm which the rule seeks to remedy or prevent, and the purpose sought to be accomplished. See *Alan Realty Co. v. Fair Deal Investment Co.*, 271 Wis. 336, 340, 73 N.W.2d 517 (1955). The department's interpretation of its own safety rules should be given great weight, unless plainly erroneous or inconsistent with the regulations being interpreted. *Vonasek v. Hirsch and Stevens, Inc.*, 65 Wis.2d 1, 7, 221 N.W.2d 815 (1974).

The purpose of the rule is to protect persons from walking into the path of a moving vehicle when a doorway opens onto a railway, trolley track or driveway. The hazard is present whether the driveway is internal or external to the building. Thus, the department's interpretation of the rule is not plainly erroneous or inconsistent with the regulations being interpreted. There is no dispute that the employer failed to provide the barrier called for by the regulation.

Ind 54.07 provides:

"*Ind 54.07 Passageways.* Where there is not direct access to outside exit doors, safe and continuous passageways, aisles or corridors leading directly to every exit

shall be maintained at all times on all floors of all buildings. Every passageway, aisle or corridor shall conform in width to the rule for width of stairways as specified in section Ind. 54.04. Widths shall be measured in the clear, at their narrowest points produced by any projection, radiator, pipe or other object and the required width shall be maintained clear and unobstructed at all times."

Since the regulation is concerned with "direct access to outside exit doors," it appears that the purpose of the rule is to facilitate leaving the building in the event of an emergency such as a fire. In this case, the employer is correct that the purpose of the safety order is not to prevent the type of injury that occurred in this case. Therefore, Ind 54.07 is not a proper basis for added compensation under sec. 102.57, Stats., 1973.

The employer argues that because the examiner listed several causes of the accident, the award must be struck down. The employer relies on *Van Sluys v. ILHR Department*, 38 Wis.2d 419, 157 N.W.2d 606 (1968), which the employer summarizes as striking down "the penalty because there was no determination as to which of three alleged violations caused the accident."

In *Van Sluys*, DILHR *denied* the fifteen percent increased compensation, and this court *affirmed* the circuit court judgment confirming the department's order. In addition, there was no credible evidence establishing that the accident was caused by a violation of a safety provision. The department was left to speculate whether the accident was caused by the violations or by negligence, and the award could not be based on mere conjecture.

In the instant case, the failure of the employer to provide a doorway barrier contributed substantially to Mr. Zenefski's injuries and death. There was credible evidence supporting such a conclusion; the examiner was not left to mere speculation.

The employer argues that it cannot be penalized because of language in *Wenzel v. Henoch Const. Co. v. Industrial Comm.*, 202 Wis. 595, 602, 233 N.W. 777 (1930), which provides:

". . . Before a penalty should be imposed, an employer engaged in any work ought to be reasonably advised or informed as to what safety devices or safeguards are required in order that the question as to whether or not he is complying therewith may be at least reasonably clear. . . ."

That language referred to an industrial commission safety rule which required that all excavations be securely shored up. The court found the rule defective because it did not specify the manner in which the excavation could be securely shored up. The problem was that the mere happening of a cave-in would probably justify a conclusion that the excavation was not securely shored up, and thus an employer could never be sure if he had complied with the order.

There is no such problem in the case before the court. Ind 1.15 specifies in detail the necessary barrier.

*By the Court.*—Judgment affirmed.

DAY, J., withdrew from participation.