TRAVELERS INDEMNITY COMPANY OF ILLINOIS,
Plaintiff-Respondent,

v.

STAFF RIGHT, INC.,
Defendant-Appellant.

Court of Appeals

*No. 2004AP2802. Oral argument December 7, 2005.
—Submitted on Supplemental briefs February 20, 2006.
—Decided March 14, 2006.*

2006 WI App 59

(Also reported in 714 N.W.2d 219.)

On behalf of the defendant-appellant, the cause was submitted on the briefs and supplemental briefs of *Attorney Arthur E. Beck* and *Attorney Steven W. Jelenchick* of *Beck, Chaet & Bamberger, S.C.*, of Milwaukee. There was oral argument by *Arthur E. Beck*.

On behalf of the plaintiff-respondent, the cause was submitted on the brief and supplemental brief of *Jonathan H. Dudley* of *Howard, Solochek & Weber, S.C.*, of Milwaukee. There was oral argument by *Jonathan H. Dudley*.

Before Fine, Curley and Kessler, JJ.

¶ 1. FINE, J. Staff Right, Inc., appeals from a summary judgment awarding Travelers Indemnity Company of Illinois more than $100,000 on its claim that

Staff Right owed it for the unpaid part of a worker's-compensation premium. We reverse and remand for further proceedings consistent with this decision.

## I.

¶ 2.  Staff Right supplies temporary workers to businesses in both Wisconsin and other states. This case concerns temporary worker's-compensation coverage for workers it supplied to a Wisconsin company for that company's project in Illinois. Staff Right's worker's-compensation coverage in Illinois was under an assigned-risk pool stemming from its earlier placement in Illinois of temporary workers, and Travelers was its assigned worker's-compensation carrier. *See* ILL. ADMIN. CODE tit. 50, §§ 2904.60, 2904.70 (assigned-risk worker's-compensation coverage).

¶ 3.  On March 22, 2000, Travelers issued a worker's-compensation policy to Staff Right for the Illinois project that underlies this appeal. The "policy period" was from March 1, 2000, to March 1, 2001. The policy states on its face:  "The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans. All required information is subject to verification and change by audit to be made ANNUALLY." (Small capitals in original.)

¶ 4.  The dispute here focuses on an "experience rating modifier" of 2.83 that Travelers applied in setting Staff Right's premium.[1] Staff Right contended that the modifier was too high, and that, as a result, Travelers overcharged it.

---

[1] "Experience rating is a system of credits and debits intended to put upon an employer that additional responsibility which his failure of care and caution occasions, or his experience of his plant occasions, and give him a debit for his failure, and to give that other employer who does look after it a credit. Experience rating

251

¶ 5. In support of its motion for summary judgment, Travelers submitted an affidavit of a Travelers assistant manager, Colleen Winegardner. Winegardner averred that, as material to this decision:

- "Worker's Compensation Premiums are calculated by multiplying the company payroll by the worker's [*sic*] classifications and then again by the modification factor."

- "To determine Staff Right, Inc.'s premium, Travelers applied the experience rating modifier assigned to it by the National Council on Compensation Insurance of 2.83."

- The National Council on Compensation Insurance "is a non-profit corporation that has been compiling statistics regarding Worker's Compensation Insurance for providers and administrative agencies alike since 1922."[2]

- "Under applicable Illinois law, experience rating are [*sic*] determined by the National Council on Compensation Insurance subject to the review of the Illinois Department of Insurance." (Parenthetical with acronym omitted.)

---

is, after all, the finest type of encouragement to accident and disease prevention. That is its purpose and the balancing up of liability."

*Wisconsin Comp. Rating & Inspection Bureau v. Mortensen,* 227 Wis. 335, 344, 277 N.W. 679, 683 (1938) (adopting definition testified to by a former chairman of the Wisconsin Industrial Commission).

[2] The National Council on Compensation Insurance has been described, *inter alia,* as "an association comprised of workers' compensation insurers which acts as a clearinghouse for information for its members." 1984 Ill. Op. Att'y Gen. 42, 1984 WL 60042, at *2 (Sept. 13, 1984).

- "Among the duties delegated to [The National Council on Compensation Insurance] is the power to determine experience rating modifiers."

- "[T]he particular insurance provider in the State of Illinois is left with no choice as to what experience rating modifier to apply to the insured's policy."

- "In the present situation, Travelers was assigned, by the [National Council on Compensation Insurance] and therefore by the Illinois Department of Insurance, an experience rating modifier of 2.83 for the year 2000, and, in turn, applied this experience rating modifier to Staff Right's Worker's Compensation Insurance premium [on the policy at issue here]."

¶ 6. Staff Right submitted in opposition to Travelers's motion for summary judgment an affidavit by Gerald Ordoyne, described in his affidavit as "a Manager in the Experience Rating Department of the National Council on Compensation Insurance," that averred that he had reviewed the Council's records and "determined that [it] did not generate [the] Experience Modification Factor [the disputed 2.83 used by Travelers] because Staff Right lacked sufficient interstate employment experience to properly generate such an interstate Modification Factor." He further averred that the National Council on Compensation Insurance "did not generate an Experience Rating Modifier" for Staff Right "until a rating effective date of December 31, 2002." Ordoyne's affidavit and an affidavit executed by a Vice President of the Wisconsin Worker's Compensation Rating Bureau (described by the affidavit as "a quasi-governmental agency" involved in the administration of Wisconsin's worker's compensation system), together indicate, in essence, that the 2.83 experience-

253

rating modifier Travelers used was applicable only to Staff Right's Wisconsin operations. Ordoyne averred that the Council "notified Travelers of the 2.83 Wisconsin modification factor." Staff Right contends that Travelers improperly used the Wisconsin multiplier in setting the disputed Illinois premium.

¶ 7. The trial court ruled in its oral decision that Staff Right had not carried its summary-judgment burden because it had not demonstrated either how the 2.83 experience-rating modifier Travelers used in setting Staff Right's premium was too high, or what the correct modifier should have been. Further, the trial court accepted Travelers's contention that Travelers, as phrased by the trial court in its oral decision, "had no discretion to set the experience rating modifier but must apply the one set by" the National Council on Compensation Insurance.

## II.

¶ 8. Our review of a trial court's grant of summary judgment is *de novo. Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–317, 401 N.W.2d 816, 820–821 (1987). In assessing whether summary judgment is appropriate, we first determine whether the complaint states a claim, and, if so, whether there are any genuine issues of material fact for trial. *Preloznik v. City of Madison*, 113 Wis. 2d 112, 116, 334 N.W.2d 580, 582–583 (Ct. App. 1983). Summary judgment is not appropriate if the complaint states a claim and there are genuine issues for trial. Wis. Stat. Rule 802.08(2). In this connection, we are not bound by either the parties' framing of the issues, *see Saenz v. Murphy*, 162 Wis. 2d 54, 57 n.2, 469 N.W.2d 611, 612 n.2 (1991),

*overruled on other grounds by State ex rel. Anderson-El v. Cooke*, 2000 WI 40, 234 Wis. 2d 626, 610 N.W.2d 821, or a party's alleged concession on a point of law, *see Fletcher v. Eagle River Mem'l Hosp., Inc.*, 156 Wis. 2d 165, 178–180, 456 N.W.2d 788, 794–795 (1990).

¶ 9.  Under Illinois law, companies that are unable to get worker's-compensation coverage in the open market are assigned a carrier. ILL. ADMIN. CODE tit. 50, §§ 2904.60, 2904.70. If immediate binding of coverage is needed, the Illinois Council on Compensation Insurance gives "a quotation for the estimated annual premium" based on information given to it by the employer's agent or broker. Sec. 2904.70(b).[3] The employer's agent or broker must then pay upfront "at least 25% of the estimated annual premium or if installment payments are requested, the applicable deposit required by Section 2904.100 of this Part." Sec. 2904.70(b). If immediate binding of coverage is not needed, the employer applies to the Illinois Council on Compensation Insurance for an assigned-risk carrier. Sec. 2904.60(b). The Illinois Council on Compensation Insurance then reviews the employer's application, and "[i]f the application is complete the [Illinois Council on Compensation Insurance] will designate an insurance carrier *which shall calculate the estimated annual premium . . . required." Ibid.* (emphasis added). Under § 2904.60, as in the immediate-binding-of-coverage situation covered by § 2904.70, the employer pays "at least 25% of the estimated annual premium" unless "installment payments are requested." Sec. 2904.60(c)

---

[3] The word "Bureau" in the applicable regulations "means the Illinois Council on Compensation Insurance." ILL. ADMIN. CODE tit. 50, § 2904.40. Accordingly, we use the more descriptive phrase, Illinois Council on Compensation Insurance, whenever we refer to what the regulations call the "Bureau."

(referencing ILL. ADMIN. CODE tit. 50, § 2904.100). All assigned carriers must give to the Illinois Council on Compensation Insurance "a copy of each notice of premium prepared pursuant to Sections 2904.60 or 2904.70 of " ILL. ADMIN. CODE tit. 50, pt. 2904 "[w]ithin ten days of assignment of any risk." ILL. ADMIN. CODE tit. 50, § 2904.80.

¶ 10.   As we have seen, ILL. ADMIN. CODE tit. 50, § 2904.60(b) specifically recognizes that the assigned worker's-compensation carrier "shall calculate the estimated annual premium . . . required." But the calculation is not done in a vacuum. Rather, worker's-compensation carriers accepting assigned-risk designations "shall rate all policies issued under [ILL. ADMIN. CODE tit. 50, pt. 2904] in accord with the National Council on Compensation Insurance Manuals of Rules and Rates on file with the Department of Insurance." ILL. ADMIN. CODE tit. 50, § 2904.190. Further, an initial premium-calculation is not set in stone:   "Final earned premium for any policy issued under the requirements of [tit. 50, pt. 2904] shall be determined on actual, instead of estimated, payroll or other premium basis." ILL. ADMIN. CODE tit. 50, § 2904.120.

██

¶ 11.   Although the Illinois Director of Insurance is given broad oversight authority in connection with worker's-compensation carriers doing business in Illinois and their rate-setting methodologies, *see generally* 215 ILL. COMP. STAT. 5/454–471, we have found nothing in either the Illinois statutes or regulations that supports Travelers's contention and the trial court's conclusion that Travelers had no discretion in the setting of an experience-rating modifier of 2.83, or that, once set, the premium cannot be adjusted. ILLINOIS ADMIN. CODE tit. 50, § 2904.190, upon which Travelers relies to

support its contention that it had no choice but to apply the 2.83 experience-rating modifier to Staff Right, dictates a calculation *method* not a result. Indeed, 215 ILL. COMP. STAT. 5/462b recognizes that the carrier sets the premiums, subject to review:

Insurance companies shall apply correct classifications, payrolls and other factors of a rating system to compute premiums. If the application of incorrect classifications, payrolls or any other factors of a rating system results in the payment by an insured of premiums in excess of the premiums that would have been paid utilizing the correct applications of classifications, payrolls or other factors of a rating system, the insurer shall refund to the insured the excessive premium paid for the period during which the incorrect application of classifications, payrolls or other factors of a rating system were applied. This Section is intended to codify existing law and practice.

This, of course, is specific statutory authority for ILL. ADMIN. CODE tit. 50, § 2904.120 ("Final earned premium for any policy issued under the requirements of [ILL. ADMIN. CODE tit. 50, pt. 2904] shall be determined on actual, instead of estimated, payroll or other premium basis."), which we quoted earlier.

¶ 12. As we have seen, the Travelers policy underlying this dispute apparently recognized its independent responsibility to set the applicable premium, subject to whatever adjustments might be appropriate: "The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans. All required information is subject to verification and change by audit to be made ANNUALLY." (Small capitals in original.) An employer seeking a refund under 215 ILL. COMP. STAT. 5/462b, need only allege:

(1) the existence of an insurance contract; (2) allegations of incorrect application of classification, payroll, or other factors of a ratings system to compute premiums and/or the application of an incorrect classification, payroll, or other factors of an incorrect ratings system to compute premiums[;] and (3) such conduct resulted in overpayment by the insured.

*Casualty Ins. Co. v. Hill Mech. Group*, 753 N.E.2d 370, 375 (Ill. App. Ct. 2001). Staff Right's objection to Travelers's assessment of premiums passes this muster. Additionally, since on this Record the trial court's grant of summary judgment was based on its erroneous view that Travelers was required by Illinois law to apply the experience-rating modifier of 2.83, we cannot conclude, on our *de novo* review, that Travelers was "entitled to a judgment as a matter of law." WIS. STAT. RULE 802.08(2). Accordingly, we reverse and remand for further proceedings, with leave for either or both parties to seek summary judgment if, in the view of either or both, there are no disputed facts as to whether Staff Right is entitled to a refund under 5/462b.

*By the Court.*—Judgment reversed and cause remanded with directions.