David P. GENNRICH, Plaintiff-Appellant,

BLUE CROSS OF CALIFORNIA, Involuntary Plaintiff,

v.

ZURICH AMERICAN INSURANCE COMPANY and Grand Geneva, LLC, Defendants-Respondents,

ABC INSURANCE COMPANY and Does 2 through 50, and 52 through 100, inclusive, Defendants.

Court of Appeals

*No. 2009AP2111. Submitted on briefs April 8, 2010. —Decided July 21, 2010.*

2010 WI App 117

(Also reported in 789 N.W.2d 106.)

Before Brown, C.J., Neubauer, P.J., and Snyder, J.

¶ 1. BROWN, C.J. The issue in this case is whether and to what extent the safe place statute applies to a golf course that is open to the public when a golfer is injured because of a defective fence at a tee box. The circuit court agreed with Grand Geneva, LLC, when it held that Grand Geneva had no notice of the defect and therefore could not be held responsible under the safe place statute. It also held that if there was no safe place violation, then there was no common law negligence. But we hold that Grand Geneva had a duty to inspect. Grand Geneva may not avoid liability by hiding its head in the sand like the proverbial ostrich and then claim that it had no notice. We further hold that the circuit court wrongly concluded that the failure of a safe place claim meant the common law negligence claim also failed because the two are dependent on each other. Actually, they are independent actions. We reverse in toto and remand with directions.

## BACKGROUND

¶ 2. In 2004 David P. Gennrich was golfing at the Highlands Golf Course owned by Grand Geneva, LLC.

The fourteenth hole of the course had an elevated tee box. When Gennrich and the rest of his golfing party reached the fourteenth hole, they parked their golf cart on the asphalt path and walked up about five feet of stairs to reach the tee. The top of the stairs is flanked by a split-rail fence on both sides as a golfer walks to the tee box. There were no plants, signs or other obstructions warning golfers not to lean or sit on the fence. The fourteenth hole also did not have a bench or other place for golfers to lean or sit on while waiting to tee off. While Gennrich was waiting for his turn, he leaned against the top rail of the split-rail fence. The fence gave way, and Gennrich fell to the asphalt golf cart path below. Gennrich reported the incident to Grand Geneva, declined medical treatment and finished his round. But, at some later date, he discovered that the fall injured his back. He then sued Grand Geneva in 2007, asserting that Grand Geneva was negligent in maintaining and repairing the fence under the safe place statute, WIS. STAT. § 101.11 (2007–08),[1] and negligent under common law.

¶ 3. Grand Geneva moved for summary judgment on both the safe place statute and common law negligence causes of action. Regarding the safe place statute, Grand Geneva alleged that it was not in violation because it lacked the required actual or constructive notice that the split-rail fence was defective and needed to be repaired. It included an affidavit stating that one of its employees inspected the golf course from "tee to green" every day and that the employee's supervisor inspected the golf course at least once a week. Grand Geneva also asserted that it assumed golfers would lean

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

against the fence, and since there had been no accident before Gennrich's, it had no reason to believe that the fence was defective and thus no actual or constructive notice of the defect. And, it contended, since it cannot be found in violation of the safe place statute, it also cannot have been negligent under the common law.

¶ 4. Concerning the safe place statute, Gennrich posited that Grand Geneva's inspection was insufficient and it would have known that the fence was defective had it followed a reasonable standard of care for inspecting the fence. He pointed to evidence that the "tee to green" inspection was only a visual inspection and that no employee at Grand Geneva did a hands-on inspection by touching the fence, putting weight against it, or otherwise testing the fence for sturdiness or safety. And he presented evidence from his expert that a reasonable inspection would have included a hands-on inspection. He also submitted a deposition from a member of his golfing party in which she stated that, when she touched the fence shortly before the incident, it "wiggled pretty bad" in a "very scary way." Gennrich argued that a hands-on inspection would have notified Grand Geneva that the fence was unstable and unsafe, so the lack of inspection satisfied the notice requirement.

¶ 5. Gennrich also disputed Grand Geneva's contention that a common law negligence action cannot be maintained when a claim under the safe place standard of care fails. In support of his argument that the common law negligence claim should proceed, he cited to *Megal v. Green Bay Area Visitor & Convention Bureau, Inc.*, 2004 WI 98, ¶ 23, 274 Wis. 2d 162, 682 N.W.2d 857, in which our supreme court held that a common law negligence claim may survive where a safe place statute claim fails because the safe place statute

addresses unsafe conditions and structural defects, whereas, common law negligence addresses negligent acts.

¶ 6. The circuit court concluded, as to the safe place statute, that it was unknown when the fence became defective and held that Gennrich failed to prove that the defect existed for "a sufficient length of time" to provide constructive notice. It cited to the court of appeals *Megal* case, not the supreme court *Megal* case, *Megal v. Green Bay Area Visitor & Convention Bureau, Inc.*, 2003 WI App 230, 267 Wis. 2d 800, 672 N.W.2d 105, in agreeing with Grand Geneva's argument that a common law negligence action cannot be maintained when a safe place claim fails. It therefore granted Grand Geneva's motion for summary judgment and denied Gennrich's motion for reconsideration. Gennrich appeals.

## DISCUSSION

### *Safe Place Statute*

██

¶ 7. The safe place statute imposes a higher duty than the common law duty of ordinary care on certain "employers" and "owners," and the extent of that higher duty depends in part on whether the defendant is an employer or an owner. *Williams v. International Oil Co.*, 267 Wis. 227, 229, 64 N.W.2d 817 (1954). As stated in the statute:

> Every employer shall furnish employment which shall be safe for the employees therein and shall furnish a place of employment which shall be safe for employees therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt

and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters. Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or public building as to render the same safe.

WIS. STAT. § 101.11(1). The express statutory language limits the duties in the first sentence to employers; whereas, the second sentence applies to employers and owners. Because employers have a broader duty, we first discuss whether Grand Geneva was an employer.

¶ 8. In the pleadings, Gennrich alleged that Grand Geneva "owned and operated" the golf course and was an "employer[] and/or owner[] of a place of employment or public building within the meaning of WISCONSIN STATUTES § 101.11 in relation to the premises on which the golf course . . . is located." In Grand Geneva's summary judgment materials, it referred to itself as the entity that "owned and *operated*" the golf course. (Emphasis added.) During the summary judgment proceedings, however, there was no discussion or argument whatsoever about whether Grand Geneva was an employer; the parties called Grand Geneva the "employer," "owner," "operator," or "owner/operator," without explaining what Grand Geneva was in relation to the statute. The same is true on appeal.

¶ 9. Though the parties have not argued and framed the issue as whether Grand Geneva is an employer, that is the exact issue we first address. We may do so because this case is before us on summary judgment, and in such cases, we are not bound by the

parties framing of the issues. *See Travelers Indem. Co. v. Staff Right, Inc.*, 2006 WI App 59, ¶ 8, 291 Wis. 2d 249, 714 N.W.2d 219. The party moving for summary judgment is not entitled to limit consideration to the legal theories that party chooses if other legal theories are supported by the factual submissions of the parties. *See State v. Holmes*, 106 Wis. 2d 31, 39–40, 315 N.W.2d 703 (1982) (holding that it is well recognized that courts may sua sponte consider legal issues not raised by the parties). The hallmark of summary judgment is that it is granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987) (citing Wis. Stat. § 802.08(2)). A reviewing court *independently reviews* the circuit court's decision and summary judgment materials in making this decision and, as such, the reviewing court applies a de novo standard of review. *See id.*

¶ 10. We see the initial question as being whether Grand Geneva is an employer regarding the golf course. Even though Gennrich did not discuss this issue, we must decide the issue to fulfill our duty to independently decide if judgment is warranted as a matter of law. So we independently look at the law and apply the parties' summary judgment materials to that law. The law says that an "employer" is "any person, firm, [or] corporation . . . having control or custody of any employment, place of employment or of any employee." Wis. Stat. § 101.01(4). A "place of employment," in turn, is defined by the statute as "every place . . . where either temporarily or permanently any . . . business, is carried on . . . and where any person is, directly or indirectly,

employed by another for direct or indirect gain or profit." Sec. 101.01(11). Stated another way, Grand Geneva is an employer and the golf course is a place of employment if Grand Geneva had control or custody of the golf course which employed people and was run for a profit.

¶ 11. In this case, Grand Geneva's summary judgment materials include evidence that it employed a staff of people for grounds maintenance at the golf course and that at least some of those employees had specific duties regarding the fourteenth tee and the fence at issue. It submitted an affidavit from James Crothers which stated: "Prior to and at the time of Gennrich's accident, Kenneth Raymond was employed [by Grand Geneva] as the Grounds Superintendent for the Highlands Golf Course. [James Crothers, Grand Geneva's Director of Grounds Maintenance,] was the supervisor for Mr. Raymond. Mr. Raymond had a staff of approximately 15 to 17 associates at the time of Gennrich's accident." The record also shows that Grand Geneva ran the golf course as a for-profit business which invited people to golf for a fee. When we look at these facts, as it is our independent duty to do so, we conclude that Grand Geneva holds itself out to be an employer at the golf course, the place of employment at issue here.

¶ 12. Having determined that Grand Geneva is an employer and that the golf course is a place of employment, we apply the safe place statute as it pertains to employers. We quoted the safe place statute earlier, and now we highlight that the relevant language, as applied to this case, places a duty on Grand Geneva to make the golf course safe for frequenters such as Gennrich. *See* Wis. Stat. § 101.11(1). And as part of keeping the golf course safe, the statute commands Grand Geneva to

101

"adopt and use methods and processes reasonably adequate to render such . . . place[] of employment safe," to "do every other thing reasonably necessary to protect the life, health, safety, and welfare of such . . . frequenters," and to "construct, repair or maintain" the golf course to render it safe. *See id.*

¶ 13. The circuit court concluded that judgment could be granted as a matter of law because Gennrich could not prove that the defect existed for "a sufficient length of time" to provide constructive notice to trigger Grand Geneva's duty. It is true that actual or constructive notice is required to trigger the duty in the safe place statute to repair or maintain. *See Fitzgerald v. Badger State Mut. Cas. Co.*, 67 Wis. 2d 321, 330–31, 227 N.W.2d 444 (1975). But we note that if, as Gennrich alleges, Grand Geneva inadequately inspected the fence, then Grand Geneva's faulty inspection may suffice as its constructive notice. If there is a duty to inspect and an adequate inspection would have required an inspection method different from what the employer used and would have alerted the employer to the defect which injured the frequenter, then the jury may infer constructive notice of the defect. *See Karis v. Kroger Co.*, 26 Wis. 2d 277, 284–85, 132 N.W.2d 595 (1965); *see also* Wis JI—CIVIL 1900.4, note (instructing the jury that notice includes that which "in the exercise of reasonable diligence (this includes the duty of inspection) should have discovered the defect in time to take reasonable precautions to remedy the situation").

¶ 14. In applying the safe place statute, our supreme court has held that it includes a duty on employers to inspect premises to ensure that they are safe. *Wisconsin Bridge & Iron Co. v. Industrial Comm'n*, 8 Wis. 2d 612, 618–19, 99 N.W.2d 817 (1959). The su-

preme court acknowledged in *Wisconsin Bridge* that "[t]he burden to investigate or inspect premises in order that they be safe for employment may be burdensome at times upon an employer," but explained that the burden "does not excuse [an employer] from the duty so imposed upon it by the safe place statute, and a failure to comply renders it liable for the violation of . . . the safe place statute." *Id.* The question of whether the employer was negligent in its duty to inspect its premises for safety is a question of fact. *See id.*

¶ 15. Grand Geneva argues that the duty to inspect in *Wisconsin Bridge* does not apply for two reasons: (1) it is not Gennrich's employer and (2) the duty to inspect does not apply to owners. These arguments do not pass muster. Though not stated with specificity, Grand Geneva's position appears to be that the safe-place statute's focus on employers and places of employment is inapposite to the case at hand because they come into play only if the "place" is one primarily built for employees (where a frequenter may sometimes appear), not one primarily built for the public. But the safe place statute does not draw that fine distinction and we have found no case that draws that distinction either. In *State ex rel. Kalal v. Circuit Court*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110, our supreme court explicitly confirmed that statutory interpretation "begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry." (Citations omitted.) The court also stated that:

> Context is important to meaning. So, too, is the structure of the statute in which the operative language appears. Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surround-

103

ing or closely-related statutes; and reasonably, to avoid absurd or unreasonable results.

*Id.*, ¶ 46. When we look at WIS. STAT. § 101.11(1), we see that it applies to all employers who furnish employment and to the places of employment as well. When we turn to WIS. STAT. § 101.01(11), defining a "[p]lace of employment," we see that it applies to *"every* place, whether *indoors or out* . . . where any . . . business is carried on, and where any person is, directly or indirectly, employed by another for direct or indirect . . . profit." (Emphasis added.) Clearly, a public-for profit golf course is such a place. There is no limiting language in the statutes saying otherwise. If indeed it is Grand Geneva's position that the safe-place statute's reference to employers and places of employment concern only premises built mainly for its employees to work in, and not for the paying public, the plain reading of the statutes requires us to reject that claim.

¶ 16. The safe place statute places a duty on employers to their employees *and their frequenters.* A "frequenter" is a person that is someone other than an employee or trespasser at the place of employment. *See* WIS. STAT. § 101.01(6). There can be no dispute here that the golf course welcomed Gennrich to play golf at its course for a fee. The facts more than satisfy the definition of "frequenter" in § 101.01(6). We therefore conclude that Grand Geneva had a duty to inspect.

¶ 17. As to Grand Geneva's second reason, we have already concluded that Grand Geneva qualifies as an employer. That Grand Geneva also owns the golf course does not necessarily mean its duty is any less. If anything, Grand Geneva's assertion qualifies it as an owner of a place of employment. As such, even in that

circumstance, there would still be a duty to inspect and that duty would come under *Karis*.

¶ 18. In *Karis*, our supreme court concluded that though the duty to maintain does not arise until constructive knowledge of the defect exists, there is a duty as to places of employment "to make timely and adequate periodic inspections of any safety devices to ascertain whether they are properly functioning." *Karis*, 26 Wis. 2d at 284. In connecting the duty to inspect to the duty to maintain, *Karis* explained that if an adequate inspection would have revealed the defect and that inspection was not performed, then the jury may infer constructive notice of the defect. *See id.* at 282, 284–85. Though it is true that the defendant in *Karis* was an employer, the concern was the duty to maintain, which is a duty that the safe place statute applies to both owners and employers alike. As the safe place statute states, "Every employer and *every owner of a place of employment* or a public building now or hereafter constructed *shall so construct, repair or maintain such place of employment* or public building as to render the same safe." Wis. Stat. § 101.11(1) (emphasis added). We conclude that the duty to inspect in *Karis* applies to owners of places of employment; the fact finder may find that the fence was a safety device requiring inspection.[2]

¶ 19. We conclude that Grand Geneva as an employer and as an owner of a place of employment had a duty to inspect the fence. Because it is up to the fact finder to evaluate the evidence in determining whether

---

[2] We recognize that owners of public buildings may argue that they have different duties from owners of places of employment, but the record in this case shows that the golf course is a place of employment. So we do not decide whether the owner of a public building has a duty to inspect.

Grand Geneva's inspection was inadequate and whether an adequate inspection would have notified it of the defective fence, we must reverse the circuit court's grant of summary judgment for Grand Geneva on the safe place statute.[3]

### Common Law Negligence

¶ 20. The circuit court granted Grand Geneva's motion for summary judgment on the common law

---

[3] We note that both parties spent a significant portion of their briefs disputing what part of the fence failed instead of addressing the decisive issues regarding summary judgment. Grand Geneva argues that since Gennrich cannot prove which part of the fence gave way, a hands-on inspection would not have prevented the fall. It does not matter, however, how the fence came loose or what part broke or what part Grand Geneva fixed after the incident; what matters is whether Grand Geneva exercised reasonable diligence in its duty to inspect. If Grand Geneva believes a hands-on inspection would not have shown that the fence was safe, then that is a defense it can present at trial for which the jury can decide the merits. We emphasize that the question for the jury is whether it was adequate for Grand Geneva to do only a visual inspection when it knew that golfers would lean on the fence and there was a five-foot drop off on the other side of the fence. And if the jury finds that Grand Geneva failed its duty to inspect, then the jury may infer, without proof of the exact cause of the accident or the exact defect in the fence, that Grand Geneva had constructive notice of the defect.

Grand Geneva also argues that the statute of repose bars Gennrich's claims for any alleged negligence arising out of the planning, design or construction of the fence. The statute of repose provides a ten-year statute of limitation for claims arising out of a design or construction defect. *See* Wis. Stat. § 893.89. But on appeal Gennrich argues that the fence was negligently inspected, maintained and repaired—not that it was negligently planned, designed or constructed—so this issue is not properly before the court. *See Wirth v. Ehly*, 93 Wis. 2d 433, 443–44, 287 N.W.2d 140 (1980).

106

negligence claim by relying on the following statements in our opinion in *Megal*, 267 Wis. 2d 800, ¶ 25: "A negligence claim cannot be maintained when a safe place violation cannot be established. Since we have upheld the dismissal of the safe place violation claim, we also uphold the dismissal of the negligence claim." (Citation omitted.) It further reasoned that Grand Geneva had to have had actual or constructive knowledge under both the safe place statute and common law negligence, and since it concluded Gennrich had not proven notice under the safe place statute, his common law negligence claim must fail.

¶ 21. Our initial response is that, even had the circuit court correctly stated the law, we would nonetheless reverse the common law negligence part of the decision because we just reversed the safe place holding.

¶ 22. But even if we had not so held, Gennrich's negligence claim would not fail as a matter of law. This is because the circuit court applied the wrong law.

¶ 23. We need only point out that the supreme court granted review of the *Megal* decision relied upon by the circuit court and rejected the very reasoning that the circuit court applied here. *See Megal*, 274 Wis. 2d 162, ¶ 23. Our supreme court held that the safe place and common law standards of care address different types of negligence—the safe place statute addresses unsafe conditions and common law addresses negligent acts. *Id.*, ¶ 9. Our supreme court explained at length the relationship between the two types of negligence and concluded that the analyses in past cases were incorrect and unsubstantiated insofar as they precluded a common law negligence claim if a violation of

the safe place standard of care could not be established. *Id.*, ¶¶ 22–23. It therefore withdrew their precedential authority and held that

> there is no reason why, if an employee or frequenter has not proved that the employer or owner violated the higher standard of care in Wıs. Sтат. § 101.11(1) that it necessarily follows that the employee or frequenter cannot prove that the employer or owner violated the lower standard of common-law negligence by committing a negligent act.

*Id.*, ¶ 23. Our supreme court also concluded that even though no facts showed that there was constructive notice of the unsafe condition, as is necessary to establish a violation of the safe place standard of care, the plaintiff still may be able to prove common law negligence's standard of ordinary care. *Id.*, ¶ 25. Under this law, Gennrich's common law negligence claim may proceed.

¶ 24. We reverse the order granting summary judgment and remand for further proceedings not inconsistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded with directions.