**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**January 28, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2018AP1103**

**STATE OF WISCONSIN**

Cir. Ct. No. 2016CV882

**IN COURT OF APPEALS**
**DISTRICT III**

GEORGE W. HENDRIX AND WANDA K. HENDRIX,

   PLAINTIFFS-RESPONDENTS,

 V.

SECURA INSURANCE, A MUTUAL COMPANY AND 4X CORPORATION,

   DEFENDANTS-RESPONDENTS,

DEDICATED FLEET SERVICES, LLC,

   DEFENDANT-APPELLANT,

ABC INSURANCE COMPANY AND SYLVIA MATHEWS BURWELL, SECRETARY OF THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,

   DEFENDANTS.

   APPEAL from an order of the circuit court for Outagamie County: MITCHELL J. METROPULOS, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. George Hendrix suffered injuries when he slipped and fell on compacted snow in a parking lot that Dedicated Fleet Services, LLC ("DFS") leased from 4X Corporation ("4X").[1] Hendrix and his spouse, Wanda Hendrix, brought claims of common-law negligence and violations of Wisconsin's safe place statute[2] against both DFS and 4X.[3] The circuit court granted summary judgment to 4X on the ground that 4X lacked notice of the unsafe condition in the parking lot prior to Hendrix's accident. The court denied DFS summary judgment, however, based on its conclusion that there was a disputed issue of material fact as to whether DFS had such notice.

¶2 DFS now appeals, arguing that: (1) the circuit court erred by determining that there was a disputed issue of material fact as to whether DFS had notice of the unsafe condition in the parking lot prior to Hendrix's accident; and (2) the court erred by granting summary judgment to 4X. We reject DFS's first argument on its merits and conclude that DFS forfeited its second argument by failing to oppose 4X's motion for summary judgment below. Accordingly, we affirm.

---

[1] In this opinion, the term "4X" refers both to 4X Corporation individually and, when in relation to arguments and litigation joined by 4X Corporation's insurer, Secura Insurance, a Mutual Company, to both defendants-respondents.

[2] *See* WIS. STAT. § 101.11 (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[3] The other named defendants are not parties to this appeal, and we will not further mention them in this opinion.

**BACKGROUND**

¶3     The following facts are undisputed for purposes of this appeal. DFS is a business that reconditions semi-trucks and trailers. In February 2014, it operated an office and service center in Appleton, Wisconsin, that employed approximately twenty individuals. The Appleton location's business premises were leased from 4X.

¶4     According to the terms of the parties' lease, DFS had "exclusive use" of a parking lot on the property, although 4X remained "responsible" for "snow removal" in the lot. To satisfy its snow removal responsibilities, 4X contracted with Kisser Stone & Garden, LLC ("Kisser").

¶5     In a deposition, Thomas Benzschawel—a service manager at DFS's Appleton location—testified that DFS's normal procedure following a snowfall was to contact 4X when it needed an area of the parking lot plowed. 4X would then contact Kisser, and Kisser would plow the parking lot's "open areas." Because Kisser could not plow between parked semi-trucks or trailers, however, DFS would need to again notify 4X when parked vehicles were moved "into the shop," so that the previously inaccessible areas could be plowed.

¶6     Benzschawel further testified that Kisser provided DFS with "salt, a spreader, [and] shovels" so that DFS employees could "clean up" the area outside its office doors. He stated that DFS employees confined their clean-up activities to the "[e]ntry doors only."

¶7     Hendrix is an independent contractor "in the business of picking up repossessed semi tractors." At his deposition, he testified that on February 19, 2014, he parked a repossessed semi-tractor in the parking lot of DFS's Appleton location

at approximately 4:15 p.m. He then went into DFS's office to drop off paperwork and returned to the vehicle. While attempting to climb into the tractor's cab, he slipped and fell on three to four inches of packed snow. Hendrix suffered severe back injuries as a result of this fall.

¶8 Prior to Hendrix's fall, the last snowfall recorded in the Appleton area occurred on February 17, 2014. The following day—i.e., one day before Hendrix's fall—Kisser spent three hours plowing the parking lot, and an additional hour shoveling snow.

¶9 Hendrix and his spouse sued both 4X and DFS, asserting common-law negligence and safe place claims against each party. In December 2017, DFS moved for summary judgment on Hendrix's safe place claim. As grounds, DFS argued that "it did not retain the requisite control over snow removal" to establish liability under the safe place statute and that, even if it did, it had "met its obligations by making the premises as safe as the nature of the business would reasonably permit."

¶10 Two months after DFS filed its summary judgment motion, 4X filed its own motion for summary judgment. In support, 4X argued that both of Hendrix's claims against it suffered from a "fatal flaw"—that is, that Hendrix could not offer any proof that 4X "had actual or constructive notice of the slippery compacted snow prior to [Hendrix's] fall."

¶11 At a hearing, the circuit court denied DFS's motion for summary judgment. The court concluded that even if DFS "contract[ed] out" its snow removal obligations, it still had a duty under the safe place statute "to make sure the grounds are safe." Further, the court found there was a disputed issue of material fact as to whether DFS had satisfied that obligation.

4

¶12 Conversely, the circuit court granted 4X's motion for summary judgment on both the safe place and negligence claims. The court concluded that as the "renter or the leaser of the property," 4X was "somewhat removed from the day-to-day obligations with regards to keeping a safe place," and that it "would not have had notice [of any snow in the parking lot] given these facts[.]"

¶13 On May 21, 2018, the circuit court entered a written order reflecting its decisions made at the summary judgment hearing. DFS now appeals from that order.

## STANDARD OF REVIEW

¶14 We review de novo the grant or denial of summary judgment, employing the same methodology as the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314-17, 401 N.W.2d 816 (1987). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).

¶15 In reviewing the parties' submissions, we draw all reasonable factual inferences in the light most favorable to the nonmoving party. *Pum v. Wisconsin Physicians Serv. Ins. Corp.*, 2007 WI App 10, ¶6, 298 Wis. 2d 497, 727 N.W.2d 346 (2006). Whether an inference is reasonable and whether more than one inference may be drawn are questions of law that we review independently. *Id.*

**DISCUSSION**

**I. Denial of summary judgment to DFS**

¶16    DFS first argues that the circuit court erred by denying its motion for summary judgment on Hendrix's safe place claim because DFS lacked notice of any unsafe condition in the parking lot prior to Hendrix's accident. The safe place statute requires that "[e]very employer … shall furnish a place of employment which shall be safe for employees therein and frequenters thereof." WIS. STAT. § 101.11(1). As such, an employer must keep its place of employment "as safe as the nature of the premises reasonably permits." *Kaufman v. State St. Ltd. P'ship*, 187 Wis. 2d 54, 59, 522 N.W.2d 249 (Ct. App. 1994).

¶17    As pertinent here, to be held liable under the safe place statute for an unsafe condition or defect, an employer must have actual or constructive knowledge that the unsafe condition or defect exists.[4] *Kochanski v. Speedway SuperAmerica, LLC*, 2014 WI 72, ¶32, 356 Wis. 2d 1, 850 N.W.2d 160. Likewise, "to be held liable for negligence, [the defendant] must have had actual or constructive notice of the condition which caused the plaintiff's fall." *Wallow v. Zypan*, 35 Wis. 2d 195, 200, 150 N.W.2d 329 (1967).

¶18    Constructive notice is a "fiction that attributes knowledge of a fact to a person 'as if he had actual notice or knowledge although in fact he did not.'" *Kochanski*, 356 Wis. 2d 1, ¶32 (citation omitted). Generally, "constructive notice is chargeable only where the hazard has existed for a sufficient length of time to allow the vigilant owner or employer the opportunity to discover and remedy the

---

[4] It is undisputed on appeal that the compacted snow in the parking lot constituted an unsafe condition.

situation." *Id.*, ¶34. Stated differently, constructive notice may be inferred when an employer fails to adequately inspect its premises. *See Gennrich v. Zurich Am. Ins. Co.*, 2010 WI App 117, ¶¶13-14, 329 Wis. 2d 91, 789 N.W.2d 106.

¶19 The question of whether an employer was negligent in its duty to inspect its premises is a question of fact to be determined by a jury. *Id.* Still, a plaintiff must provide more than "[s]peculation as to how long the unsafe condition existed and what reasonable inspection would entail" to survive summary judgment. *Kochanski*, 356 Wis. 2d 1, ¶36.

¶20 Here, DFS contends that Hendrix "provided no evidence as to the length of time the condition of compacted snow existed." It therefore reasons that any inference that it had constructive notice of the unsafe condition would be "purely speculative," and the circuit court should have granted it summary judgment under *Kochanski*. We are not persuaded.

¶21 As indicated, it is undisputed that two days prior to Hendrix's fall there was an accumulation of snow in the parking lot. It is further uncontested that this snowfall required Kisser to spend multiple hours removing snow the following day. In addition, Benzschawel testified that while Kisser was able to initially plow open areas of the parking lot following a snowfall, it was unable to clear snow between parked trucks. Accordingly, the twenty DFS employees who worked on the premises were available to monitor the lot and alert 4X when Kisser could return to finish clearing the area. Finally, Hendrix testified that he slipped on three to four inches of compacted snow in the parking lot.

¶22 Viewing this evidence in the light most favorable to Hendrix, as we must, we conclude that it is reasonable to infer that DFS failed, for at least an entire day, to follow its established snow removal procedures. More specifically, the

evidence allows for a reasonable inference that DFS failed to inspect the parking lot and alert 4X that the areas between parking spaces needed to be cleared of snow. Consequently, we conclude the circuit court did not err in denying DFS summary judgment on the ground that there was a disputed issue of material fact as to whether DFS had constructive notice of the compacted snow in the parking lot.

## II. Grant of summary judgment to 4X

¶23    In the alternative, DFS argues that the circuit court erred by granting summary judgment to 4X because: (1) as the owner of the parking lot, 4X had a nondelegable duty to maintain it; and (2) there is a disputed issue of material fact as to whether 4X had constructive notice of the compacted snow before Hendrix's fall.[5] Therefore, DFS asks that we reverse the court's judgment in favor of 4X and remand for the case to proceed to trial with both 4X and DFS as defendants.

¶24    We decline to address DFS's arguments on their merits.   Instead, because we agree with 4X that DFS made a strategic decision to avoid raising its arguments against 4X's motion before the circuit court, we deem those arguments forfeited.

¶25    One of the purposes of the forfeiture rule is to prevent "attorneys from 'sandbagging' opposing counsel by failing to object to an error for strategic reasons and later claiming that the error is grounds for reversal." *State v. Ndina*, 2009 WI 21, ¶30, 315 Wis. 2d 653, 761 N.W.2d 612 (citation omitted).  This rationale applies when one co-defendant fails to oppose a summary judgment motion filed by another

---

[5] Hendrix's response brief advances a number of similar arguments as to why the circuit court's grant of summary judgment to 4X was in error.   Hendrix did not file a cross-appeal, however, and so we will not consider these arguments.  *See* WIS. STAT. RULE 809.10(2)(b).

co-defendant. *See Precision Erecting, Inc. v. M & I Marshall & Ilsley Bank*, 224 Wis. 2d 288, 306-09, 592 N.W.2d 5 (Ct. App. 1998).

¶26    In *Precision Erecting*, a subcontractor brought an action against the owner of a foundry to recover unpaid bills for work on a renovation project. *Id.* at 293. The owner then brought a third-party action against its project coordinator, suppliers, and subcontractors in an effort to limit its liability for unpaid project expenses. *Id.* at 293-94. The owner moved for summary judgment against its project coordinator. *Id.* at 294. One of the third-party defendants, Nambe Mills, Inc., failed to oppose that motion but then attempted to challenge the circuit court's grant of the motion on appeal. *Id.* We concluded that Nambe had forfeited that argument, explaining:

> Nambe could have appealed the summary judgment finding [the project coordinator] to be a general contractor had it not waived[6] that right. Nambe, as a named party, had every right to appear and object to the summary judgment motion …. [R]eview would have been available to Nambe had it objected and lost. But, it cannot lie in the weeds during the initial summary judgment motion only to make its attack after the fact.

*Id.* at 306-07.

¶27    As in *Precision Erecting*, so too here. DFS undisputedly knew that 4X had moved the circuit court for summary judgment on the issue of notice. DFS chose, however, not to oppose that motion. Nor did it, at any point in the litigation, file a cross-claim against 4X. We agree with 4X that the record supports a

---

[6] Forfeiture of the right to appellate review occurs when a party fails to make a timely assertion of a right. *See State v. Ndina*, 2009 WI 21, ¶30, 315 Wis. 2d 653, 761 N.W.2d 612. Although the word "waived" was used in *Precision Erecting, Inc. v. M & I Marshall & Ilsley Bank*, 224 Wis. 2d 288, 306, 592 N.W.2d 5 (Ct. App. 1998), the more precise term in this context is forfeiture. *See Ndina*, 315 Wis. 2d 653, ¶¶29-30.

determination that this decision was strategic—DFS decided to avoid developing evidence or presenting an argument that there was factual distinction between 4X and DFS because it hoped that the court would adopt and apply 4X's arguments to its own summary judgment motion.

¶28    Indeed, on appeal DFS asserts that 4X's motion for summary judgment was made "on behalf of both" 4X and DFS.  The record, however, belies this assertion.  4X's motion was explicitly filed on behalf of "the defendants, Secura Insurance, a Mutual Company, and 4X Corporation."  Moreover, 4X's brief in support of its motion pointed out that DFS's normal procedure was to contact 4X when snow needed to be removed from the parking lot.  4X then represented that it received no such notice on the day Hendrix fell, despite the fact that snow was undisputedly on the parking lot.  In essence, this argument asserted that DFS failed to inspect the parking lot in accordance with its normal procedures, which, as discussed, may constitute constructive notice.  DFS could have, but chose not to, respond to that argument.

¶29    We further agree with 4X that even if DFS feared that opposing 4X's motion would have compromised its own motion, it had a ready solution.  That is, DFS could have supported 4X's motion to the extent that it believed Hendrix failed to establish constructive notice of the compacted snow as to both DFS and 4X, while also arguing in the alternative that if DFS had sufficient notice, then so too did 4X.

¶30    Such an alternative argument is hardly novel.  In fact, DFS structures its arguments on appeal in exactly that manner.  Thus, we conclude that DFS could have made the argument it now presents on appeal before the circuit court, but it chose instead to "lie in the weeds" and make its "attack after the fact."  *See Precision*

*Erecting*, 224 Wis. 2d at 307. We therefore deem DFS to have forfeited its arguments regarding the propriety of the court's grant of summary judgment to 4X.

¶31 DFS also presents an additional, although cursory, argument that reversal is warranted due to the court's "confusion of pertinent facts." Namely, DFS points to the fact that the circuit court briefly mischaracterized the roles of 4X and DFS during the summary judgment hearing by mistakenly referring to the wrong parties as lessor and lessee. We reject this "confusion" argument, as the court's error was immediately brought to its attention and addressed:

> THE COURT: Yes, so I [did] get them mixed up. But Dedicated Fleet is actually the business on the premises itself that rents from 4X, right?
>
> [DFS's Counsel]: Right. But there is still a representative of 4X on the premises.
>
> THE COURT: Okay. So, even with that clarification, I would still find consistent with my ruling that 4X would not have notice of this hazard, and I will grant summary judgment on their behalf.

Consequently, we conclude that, contrary to DFS's assertion, the court was well aware of DFS's and 4X's respective roles at the hearing.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

11