# COURT OF APPEALS
## DECISION
## DATED AND FILED

## January 22, 2020

Sheila T. Reiff
Clerk of Court of Appeals

## NOTICE

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.**   **2018AP817-CR**
**2018AP818-CR**

Cir. Ct. Nos.  **2016CF2472**
**2016CF2652**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MICHAEL L. WINFIELD,

DEFENDANT-APPELLANT.

APPEALS from judgments and orders of the circuit court for Milwaukee County:  PEDRO COLON, Judge.  *Affirmed.*

Before Brash, P.J., Kessler and Dugan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Michael L. Winfield appeals judgments entered after he pled guilty to four felonies:  second-degree recklessly endangering safety, operating a vehicle without the owner's consent, fleeing an officer, and burglary as a party to a crime.  He also appeals orders denying his motions for postconviction relief from his aggregate sentence of sixteen and one-half years of imprisonment.  The circuit court concluded that Winfield did not demonstrate either the existence of a new factor or that he was sentenced on the basis of inaccurate information.  The circuit court therefore denied his postconviction motions without a hearing.  We agree with the circuit court, and we additionally conclude that Winfield fails to show on appeal that his aggregate sentence violates the prohibition against cruel and unusual punishment contained in the Eighth Amendment of the United States Constitution.  We affirm.

## BACKGROUND

¶2     According to the criminal complaint in Milwaukee County case No. 2016CF2472, which underlies appeal No. 2018AP817, Winfield participated in two armed carjackings on June 4, 2016.  A.L. told police that she was driving her GMC Terrain and had come to a complete stop when a minivan struck her car from behind.  The force of the impact pushed her car into the vehicle ahead of hers, a Ford Escape.  Two men emerged from the minivan and approached A.L.  One, later identified as Winfield, pointed a gun at her and demanded that she get out of her car.  While she was taking her three-year-old child out of the back seat, Winfield hit her and her child with the gun, eventually shoving both victims to the ground and injuring them.  Winfield then got into A.L.'s car and fled the scene.  His coactor took the keys from the driver of the Ford Escape and also drove away.

2

¶3 Approximately two hours later, officers saw Winfield driving the GMC Terrain on a city street and activated their squad car's emergency lights and siren to initiate a traffic stop. Winfield did not comply, and police in pursuit observed that he drove at speeds exceeding seventy miles per hour, disregarded stop signs and traffic lights, drove through a park, and endangered other motorists and pedestrians as he successfully evaded police. Later that evening, officers again observed Winfield driving the GMC Terrain and arrested him. The State charged him with six felonies: two counts of armed robbery as a party to a crime, and one count each of physical abuse of a child, operating a vehicle without the owner's consent, second-degree recklessly endangering safety, and fleeing or eluding an officer. He faced an aggregate term of sixty years and six months of imprisonment. *See* WIS. STAT. §§ 943.32(2) (2015-16),[1] 948.03(3)(b), 943.23(3), 941.30(2), 346.04(3), 939.50(3)(c), (g), (i).

¶4 In Milwaukee County case No. 2016CF2652, which underlies appeal No. 2018AP818, the State alleged that on May 16, 2016, and again on May 18, 2016, Winfield and numerous coactors broke into Milwaukee car dealerships early in the morning, seized keys from the businesses, and drove several vehicles off the lots. On May 20, 2016, Winfield was arrested in one of the stolen cars. The State charged Winfield with two counts of burglary as a party to a crime and two counts of taking and driving a vehicle without the owner's consent. He faced an aggregate term of thirty-seven years of imprisonment. *See* WIS. STAT. §§ 943.10(1m)(a), 943.23(2), 939.05, 939.50(3)(f), (h).

---

[1] All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

3

¶5    Within a few months, Winfield decided to resolve each case with a plea agreement. In case No. 2016CF2472, Winfield pled guilty to second-degree recklessly endangering safety, operating a vehicle without the owner's consent, and fleeing an officer. In case No. 2016CF2652, Winfield pled guilty to one count of burglary as a party to a crime. The State agreed to recommend a prison sentence for the burglary and a substantial prison sentence for the other three crimes, all without specifying a recommended term of imprisonment, and to recommend that Winfield serve the burglary sentence concurrently with any other sentence imposed. Additionally, the State moved to dismiss and read in the remaining six charges pending against Winfield. As a result of his plea agreements, Winfield reduced his aggregate maximum term of imprisonment from ninety-seven years and six months to twenty-nine years and six months.

¶6    The matters proceeded to a joint sentencing hearing in September 2016. At the outset of the proceeding, the State advised the circuit court that Winfield was eighteen years old and a high school student at the time he committed the crimes in these cases. The State then described Winfield's juvenile record, explaining that Winfield was adjudicated delinquent for second-degree sexual assault when he was fifteen years old and for battery when he was sixteen years old. The State went on to discuss the crimes in the instant cases in detail and disclosed that Winfield's coactors described him as the ringleader.

¶7    Winfield, by counsel, did not dispute that prison was the appropriate disposition and asked the circuit court to impose an aggregate six-year term of imprisonment bifurcated as two years of initial confinement and four years of extended supervision. In support of this position, trial counsel described Winfield's troubled background, explaining that his mother died when he was

fourteen years old and that his father was imprisoned. Trial counsel told the circuit court that Winfield had a learning disability, carried diagnoses of attention-deficit hyperactivity disorder (ADHD) and post-traumatic stress disorder (PTSD), and that he had a history of "anger problems," "low self-confidence," "upsetting thoughts that interfere with his ability to interact in society," and "issues with sleeping, eating, [and] pain." In response to the circuit court's inquiry, trial counsel explained that the information he offered about Winfield's mental health was contained in a ten-page psychological report prepared in December 2015 by one Dr. Gust-Brey. Trial counsel added that he did not think it necessary to file the report and did not do so.

¶8      Following the parties' statements, the circuit court discussed the gravity of the offenses, Winfield's character, and the need to protect the public. The circuit court recognized that Winfield had serious mental health problems and had suffered many misfortunes, but the circuit court put greatest emphasis on the terror that Winfield's actions aroused and the extent to which he "posed [a] danger to everybody around [him]." The circuit court reminded Winfield that he had victimized a woman and a "helpless child" at gun point and engaged in "erratic, incredibly dangerous driving."

¶9      At the conclusion of the sentencing remarks, the circuit court imposed three consecutive sentences in case No. 2016CF2472: an evenly bifurcated ten-year term of imprisonment for second-degree recklessly endangering safety; and two three-year terms, each consisting of one year of initial confinement and two years of extended supervision, for the crimes of operating a motor vehicle without owner's consent and fleeing an officer. For the burglary conviction in case No. 2016CF2652, the circuit court imposed a twelve and one-

5

half year term of imprisonment, bifurcated as seven and one-half years of initial confinement and five years of extended supervision, and the circuit court ordered Winfield to serve that sentence concurrently with any other sentence. The aggregate disposition was thus sixteen and one-half years of imprisonment, bifurcated as seven and one-half years of initial confinement and nine years of extended supervision.[2]

¶10 Winfield filed a postconviction motion seeking relief from his sentences on two related grounds. First, he claimed that a new factor, namely, information about his mental health, warranted sentence modification. Second, he claimed that he should be resentenced because his original sentences were based on inaccurate and incomplete information about his "behavioral/emotional health status."

¶11 In support of the postconviction motion, Winfield submitted a four-page excerpt—pages one, eight, nine, and ten—from the ten-page psychological examination prepared in December 2015 by Dr. Karyn L. Gust-Brey. The excerpt reflects Gust-Brey's view that Winfield carried five diagnoses: conduct disorder; oppositional defiant disorder; ADHD; specific learning disorder with impairment in reading; and perpetrator of nonparental child sexual abuse. The excerpt

---

[2] The circuit court also found Winfield eligible to participate in the Wisconsin substance abuse program and the challenge incarceration program after he has served three and one-half years of initial confinement. When an inmate successfully completes either program, his or her remaining initial confinement time is converted to time on extended supervision. *See* WIS. STAT. §§ 302.045(3m)(b), 302.05(3)(c)2.

6

discloses that the sources of information on which Gust-Brey relied in preparing her report included materials from Wraparound Milwaukee services providers.[3]

¶12    As additional attachments to the postconviction motion, Winfield submitted five pages of materials from Wraparound Milwaukee, including three pages of a Plan of Care dated May 19, 2015, and two pages of clinical progress notes for the period from November 17, 2015, through January 19, 2016. These materials reflected a history of additional diagnoses, specifically PTSD and depression, and suggested that some months before Winfield committed the crimes in the instant cases, he may have stopped taking the medication that had in the past "decreased ... the frequency" of his "rough behavioral instances." Finally, Winfield submitted several pages of information about conduct disorders and ADHD from the websites webmd.com, cdc.gov, and CurrentPsychiatry.com. In light of his submissions, he contended that he was entitled to a more lenient aggregate sentence because his crimes "were unavoidable products of his multiple then-untreated behavioral/emotional pathologies."

¶13    The circuit court denied Winfield's claims without a hearing and then denied Winfield's motion for reconsideration. This appeal followed.[4]

---

[3] Wraparound Milwaukee is a program operated by the Milwaukee County Behavioral Health Division. The program coordinates care for Milwaukee youth with serious behavioral, emotional, and mental health needs. *See* https://www.dhs.wisconsin.gov/medicaid/wam.htm (last visited Nov. 26, 2019).

[4] With our permission, Winfield filed his opening brief under seal. Neither the State's response brief nor Winfield's reply brief was similarly filed under seal. The sealed brief is hereby deemed unsealed only to the extent that it is quoted, referenced, or described in this opinion.

## DISCUSSION

¶14    Winfield asserts that the circuit court wrongly denied him a hearing to present his sentencing claims. We review this assertion under a familiar standard. We consider *de novo* whether a postconviction motion on its face alleges material facts that, if true, would entitle the defendant to an evidentiary hearing. *See* ***State v. Allen***, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. "If the motion raises such facts, the circuit court must hold an evidentiary hearing." *Id.* If the motion does not present such facts, however, or if it presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has discretion to grant or deny a hearing. *See id.*, ¶¶9, 12. "We review a circuit court's discretionary decisions under the deferential erroneous exercise of discretion standard." *Id.*, ¶9.

¶15    A motion sufficient to earn a postconviction hearing should allege within its four corners "who, what, where, when, why, and how." *See id.*, ¶23. Even if a postconviction motion contains such allegations, however, the circuit court may deny the defendant's claims without a hearing when the record as a whole conclusively demonstrates that the defendant is not entitled to relief. *See* ***State v. Sulla***, 2016 WI 46, ¶29, 369 Wis. 2d 225, 880 N.W.2d 659. With the foregoing in mind, we turn to the substance of Winfield's contentions.[5]

---

[5] Winfield makes many arguments in his lengthy submissions, and we address some of those arguments differently from the way in which he presents them. We are not bound by the manner in which a party frames the issues. *See* ***Travelers Indem. Co. of Ill. v. Staff Right, Inc.***, 2006 WI App 59, ¶8, 291 Wis. 2d 249, 714 N.W.2d 219.

8

¶16    Winfield first claims that the circuit court erroneously denied his motion for sentence modification based upon the alleged new factor of information about his mental health. We disagree.

¶17    A new factor for purposes of sentence modification is "a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because ... it was unknowingly overlooked by all of the parties." *See State v. Harbor*, 2011 WI 28, ¶40, 333 Wis. 2d 53, 797 N.W.2d 828 (citation omitted). A circuit court has inherent authority to modify a defendant's sentence upon a showing of a new factor. *See id.*, ¶35. To prevail, the defendant must satisfy a two-prong test. *See id.*, ¶36. First, the defendant must demonstrate by clear and convincing evidence that a new factor exists. *See id.* This presents a question of law, which we review *de novo*. *See id.*, ¶¶33, 36. Second, the defendant must demonstrate that the new factor justifies sentence modification. *See id.*, ¶37. This determination rests in the circuit court's discretion. *See id.* If a defendant fails to satisfy one prong of the test, a court need not address the other. *See id.*, ¶38.

¶18    The record shows that Winfield did not demonstrate the existence of a new factor because he failed to show that the psychological information he presented in his postconviction motion had been "unknowingly overlooked by all of the parties" at sentencing. *See id.*, ¶40. To the contrary, his trial counsel advised the sentencing court that he was reading from a ten-page psychological evaluation prepared by Gust-Brey in December 2015, and, as we have seen, that evaluation disclosed that it drew on reports and assessments from Wraparound Milwaukee services providers. The record thus plainly shows that at the time of sentencing, Winfield was aware of the Gust-Brey evaluation and its source

materials.  Therefore, although Winfield did not offer the sentencing court the entirety of the documents that he subsequently submitted in the postconviction proceedings, Winfield himself did not lack knowledge of those documents. Accordingly, the documents and the information that they contain do not amount to a new factor as a matter of law.[6]  *See State v. Crockett*, 2001 WI App 235, ¶14, 248 Wis. 2d 120, 635 N.W.2d 673.  The circuit court properly denied this claim without a hearing.  *See Allen*, 274 Wis. 2d 568, ¶12.

¶19    In light of the foregoing, we need not consider the second prong of Winfield's new factor claim.  *See Harbor*, 333 Wis. 2d 53, ¶38.  Both parties have addressed that aspect of the claim, however, and for the sake of completeness we do so as well.  We are satisfied that the circuit court properly exercised its discretion in concluding that, even assuming Winfield offered new information in his postconviction motion, he nonetheless failed to demonstrate that the information warranted sentence modification.

¶20    The postconviction order reflects the circuit court's findings that carjackings, thefts, and physical attacks such as those Winfield perpetrated in these cases harm local businesses, damage property, and threaten the safety and security of the police and citizens alike.  Further, the circuit court found that Winfield's crime spree necessitated "significant punishment," notwithstanding his troubled background and history of mental health problems.  In the circuit court's

---

[6] Winfield suggests in his reply brief that his trial counsel was ineffective for failing to present at sentencing all of the information submitted in support of postconviction relief, and he requests a hearing to address trial counsel's alleged ineffectiveness.  Winfield did not raise the issue of trial counsel's ineffectiveness in either his opening brief or in his postconviction motion. We decline to consider an issue raised for the first time in a reply brief.  *See State v. Anderson*, 215 Wis. 2d 673, 683, 573 N.W.2d 872 (Ct. App. 1997).

view, the sentences imposed in these cases were necessitated by a key determination: "the community cannot be subjected to the danger presented by this kind of criminality." As the circuit court explained, Winfield's contentions that he exhibited "'longstanding violent, disruptive, rule-transgressing ... uncontrollable impulsive, aggressive, and transgressive behaviors' as set forth in the [postconviction] motion wholly underline the need for substantial punishment and community protection." The circuit court therefore concluded that the information Winfield presented did not earn him a more lenient sentence.[7]

¶21 Winfield, of course, disagrees with that conclusion. Sentencing decisions, however, rest in the circuit court's discretion, *see State v. Gallion*, 2004 WI 42, ¶17, 270 Wis. 2d 535, 678 N.W.2d 197, and therefore the circuit court— not the defendant and not this court—has the duty to "navigate the fine line between what is clearly too much time behind bars and what may not be enough," *see State v. Ramuta*, 2003 WI App 80, ¶25, 261 Wis. 2d 784, 661 N.W.2d 483.

¶22 The postconviction order reflects a proper exercise of discretion. The circuit court did not make any legal errors, and it fully set forth its reasons for concluding that Winfield did not present information warranting sentence modification. *See Harbor*, 333 Wis. 2d 53, ¶63. Accordingly, we reject Winfield's challenges to the decision denying sentence modification based on an alleged new factor.

---

[7] We observe that the policy of this state is that a person is not absolved of responsibility for his or her crimes when the person suffers from "an abnormality manifested only by repeated criminal or otherwise antisocial conduct." *See* WIS. STAT. § 971.15(1)-(2).

11

¶23    Winfield next asserts that he is entitled to resentencing on the ground that the circuit court sentenced him based on inaccurate information. A defendant has a due process right to be sentenced upon accurate information. ***State v. Tiepelman***, 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1. To establish a denial of this right, the defendant must show both that the disputed information was inaccurate and that the sentencing court actually relied on the inaccurate information. *See **id.***, ¶26. Whether a defendant has been denied the due process right to be sentenced on accurate information is a constitutional question we review *de novo*. *See **id.***, ¶9.

¶24    Winfield argues that the circuit court here sentenced him based on an "incorrect, inaccurate, and incomplete picture" that he describes as consisting of five parts: (1) he "had no chronic behavior disorders manifesting continually through impulsive/compulsive (i.e. involuntary) ... behaviors"; (2) PTSD and ADHD were his only behavioral or mental health disorders and they "did not manifest through persistent impulsive/compulsive (i.e. involuntary) transgressive and/or violent conduct"; (3) his criminal conduct "was [the] voluntary behavior of a healthy but immature youth"; (4) his criminal conduct was not a symptom of a mental illness or a behavioral disorder "so its seriousness was not mitigated by any medical considerations"; and (5) his culpability "was not mitigated by any medical, mental health, or behavioral-emotional considerations."

¶25    Preliminarily, we observe that numerous aspects of Winfield's argument are flatly contradicted by the record. The circuit court did not sentence Winfield as "a healthy but immature youth," nor did the circuit court suggest that his personal circumstances did not include any mitigating facts. To the contrary, the circuit court explicitly told Winfield: "You have a serious diagnosis. I don't

doubt that you have PTSD. You've been through a lot in your life. You caused a lot to people [sic] but you've also been through a lot for your life and I acknowledge that."

¶26 We next observe that, although Winfield repeatedly asserts that the materials he filed in support of his postconviction motion show that his "transgressive and/or violent" conduct was "involuntary," he does not point to any expert opinion supporting that claim.[8] To the contrary, an entry in the November 2015 physician's notes states that Winfield "refuses to take responsibility for his behaviors," not that his behaviors are excused because he cannot control them.

¶27 Relatedly, and critically, Winfield did not include an expert opinion linking any of his criminal conduct in the instant cases to any medical cause. Indeed, the last of the professionals' notes and evaluations that he submitted was prepared four months before he committed any of the crimes at issue here. As the circuit court aptly observed, Winfield's repeated assertion that his crimes in these cases were symptoms of his various conditions therefore "falters upon the thin legs of speculation." To be sure, Winfield requested a hearing to provide additional information, including expert testimony from unidentified sources, but the well-established methodology for seeking postconviction relief required him to demonstrate in his postconviction motion the material facts explaining precisely whose testimony would establish precisely what proposition and how that testimony would prove his claim. *See Allen*, 274 Wis. 2d 568, ¶¶23-24.

---

[8] Our review of the briefs and the record reveals that the word "involuntary" appears 110 times in the text of Winfield's appellate brief and an additional forty-four times in the reply brief, but the word does not appear even once in the professionals' evaluation, plan of care, and clinical notes that Winfield submitted in support of his postconviction motion.

¶28     We turn to the remaining components of Winfield's contention that the circuit court relied on inaccurate information.  "Whether the circuit court 'actually relied' on ... incorrect information at sentencing, according to the case law, turns on whether the circuit court gave 'explicit attention' or 'specific consideration' to the inaccurate information, so that the inaccurate information 'formed part of the basis for the sentence.'"  *State v. Travis*, 2013 WI 38, ¶28, 347 Wis. 2d 142, 832 N.W.2d 491 (citations omitted).  Here, Winfield states at the outset of his appellate argument that the defense "overlooked the relevant correct information" and failed to present it to the sentencing court.  This contention does not support a claim of inaccurate information at sentencing.  Rather, it reflects that the circuit court sentenced Winfield based on information that he now views as incomplete.  Winfield, however, does not cite any authority—and we know of none—supporting the proposition that offenders must be resentenced merely because the circuit court had less than complete information about them.  A sentencing court can never possess the entirety of information about a defendant.[9]  Nothing in *Tiepelman* transforms that reality into a due process violation.

¶29     Moreover, we agree with the State that, insofar as Winfield's claim turns on information that the sentencing court actually received, Winfield's

---

[9] Indeed, Winfield himself has ensured that neither the circuit court nor this court has the complete picture his health care services providers presumably painted in their reports and notes. He hastened to advise the circuit court at sentencing that he did not think it necessary to file the entirety of the psychological evaluation that Gust-Brey prepared in December 2015, and he submitted only four of its ten pages with his postconviction motion.  As to the five pages of materials that Winfield submitted from Wraparound Milwaukee, these consist of two pages of physician's notes describing a visit in November 2015 and a cancellation in January 2016; and three pages of a Plan of Care, the last of which reflects that it was "completed on 5/19/15" and was "page 9 of 24."  When a defendant's sentencing presentation does not include information within the party's knowledge and control, we generally view the omission as a tactical decision, not as a basis for relief. *Cf. Rosado v. State*, 70 Wis. 2d 280, 288-89, 234 N.W.2d 69 (1975).

allegation is not that the information was inaccurate but that the circuit court assessed the information differently than Winfield would have preferred. Such an allegation, however, does not identify an error. A sentencing court has broad discretion to determine the factors it deems significant and to weigh those factors as it sees fit. *See State v. Stenzel*, 2004 WI App 181, ¶16, 276 Wis. 2d 224, 688 N.W.2d 20. Here, the circuit court learned about Winfield's troubled past and found that Winfield had a "serious diagnosis." The circuit court concluded, however, that this information did not support more lenient sentences than those imposed because Winfield was dangerous and must serve a significant period of time in prison to protect the public and to punish him. Winfield may disagree with that calculation, but his disagreement does not earn him resentencing. *Cf. State v. Prineas*, 2009 WI App 28, ¶34, 316 Wis. 2d 414, 766 N.W.2d 206 (stating that assessment of a circuit court's exercise of sentencing discretion turns on whether the circuit court exercised such discretion, not whether the circuit court could have exercised discretion differently).

¶30    In sum, Winfield fails to show, by clear and convincing evidence, that the circuit court sentenced him based on inaccurate information. The circuit court properly denied this claim without a hearing.

¶31    Last, Winfield asserts that his aggregate sentence violates his right under the Eighth Amendment of the United States Constitution to be free from cruel and unusual punishment.[10] He states that "neither the [circuit] court nor the

---

[10] The protections of the Eighth Amendment of the United States Constitution are made applicable to the states through the Fourteenth Amendment. *See State v. Ninham*, 2011 WI 33, ¶45, 333 Wis. 2d 335, 797 N.W.2d 451. We presume that Winfield intended to invoke both amendments in support of his constitutional claim.

postconviction court addressed this issue." This statement is misleading, as it suggests that the circuit court ignored one of his claims. In fact, Winfield failed to raise his Eighth Amendment challenge in the circuit court at any time.[11] "Issues that are not preserved at the circuit court, even alleged constitutional errors, generally will not be considered on appeal." *State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727. In the interests of judicial efficiency, however, we elect to discuss the claim.

¶32 Winfield argues that because his criminal conduct was a symptom of his behavioral disorders, the circuit court wrongly punished him for his medical status. In support, he directs our attention to the United States Supreme Court's statement that "a law which made a criminal offense of ... a disease would doubtless be universally thought to be an infliction of cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments." *See Robinson v. California*, 370 U.S. 660, 666 (1962). He tacitly acknowledges clarifying language in *Powell v. Texas*, 392 U.S. 514 (1968), but he asserts that the *Powell* plurality opinion, if read in conjunction with the concurrence and with *Robinson*, supports his claim "that the Eighth Amendment prohibits the state from punishing an involuntary act which is the unavoidable consequence of one's status."

---

[11] If Winfield presented his Eighth Amendment claim to the circuit court, he has not directed our attention to the place in the record where he did so. "The party raising [a constitutional] issue on appeal has the burden of establishing, by reference to the record, that the issue was raised before the circuit court." *State v. Caban*, 210 Wis. 2d 597, 604, 563 N.W.2d 501 (1997). It is not our role to scour the record for indications that an issue was preserved for appeal. Regardless, we have reviewed the record, including the sentencing transcript, the postconviction motion, and the motion for reconsideration, and found no hint of an Eighth Amendment claim in the circuit court proceedings.

¶33 We are not persuaded. Leaving aside Winfield's failure to establish that the criminal conduct at issue here was either involuntary or a symptom of any medical condition Winfield may have, the Wisconsin Supreme Court long ago rejected his construction of **Robinson** and **Powell**.

> In **Robinson** the accused was charged under a statute which made it a crime to be addicted to narcotics. The [C]ourt held that such addiction was a disease and the accused's condition was merely symptomatic of that affliction. Thus, the [C]ourt concluded, the accused could not be punished for his condition. The rationale of **Robinson** was extended to cases involving public drunkenness where the accused was an alcoholic in [a fourth circuit decision], but the [S]upreme [C]ourt rejected that extension in **Powell**. The [C]ourt in **Powell** distinguished the **Robinson** case by stating that the accused was not charged for being an alcoholic but for being drunk in public. The rule in **Powell** indicates that the **Robinson** rationale only applies where the alleged unlawful conduct is the accused's condition.

**Loveday v. State**, 74 Wis. 2d 503, 509-10, 247 N.W.2d 116 (1976) (internal citations omitted).

¶34 The **Powell** Court ultimately upheld a defendant's state conviction for public drunkenness, notwithstanding the defendant's alcoholism. The Court explained that the thrust of **Robinson** "is that criminal penalties may be inflicted only if the accused has committed some act, has engaged in some behavior, which society has an interest in preventing." *See* **Powell**, 392 U.S. at 533. The defendant in **Powell**, however, had not been punished for "a mere status"; rather, the State had imposed "a criminal sanction for public behavior." *See id.* at 532.

¶35 In the instant case, the circuit court sentenced Winfield for his illegal acts, not for his afflictions. Therefore, nothing in **Robinson** or **Powell** renders Winfield's sentences unconstitutional. *See* **State v. Gardner**, 2006 WI App 92,

¶14, 292 Wis. 2d 682, 715 N.W.2d 720 (stating that the Supreme Court made clear in *Powell* that *Robinson* "does not prohibit penalizing conduct").

¶36    Accordingly, to the extent that Winfield has a claim under the Eighth Amendment, that claim is governed by the well-settled rule that the Eighth Amendment prohibits "sentences that are grossly disproportionate to the severity of the crime." *See* *State v. Borrell*, 167 Wis. 2d 749, 775, 482 N.W.2d 883 (1992), *clarified on other grounds by* *State v. Greve*, 2004 WI 69, ¶31, 272 Wis. 2d 444, 681 N.W.2d 469.

> "'[W]hat constitutes adequate punishment is ordinarily left to the discretion of the trial judge. If the sentence is within the statutory limit, appellate courts will not interfere unless clearly cruel and unusual.'" A sentence is clearly cruel and unusual only if the sentence is "so 'excessive and unusual, and so disproportionate to the offense committed, as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances.'"

*State v. Ninham*, 2011 WI 33, ¶85, 333 Wis. 2d 335, 797 N.W.2d 451 (internal citations omitted). Further, "[a] sentence well within the limits of the maximum sentence is not so disproportionate to the offense committed as to shock the public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *State v. Berggren*, 2009 WI App 82, ¶47, 320 Wis. 2d 209, 769 N.W.2d 110 (citation omitted).

¶37    When we review a claim that a defendant's sentences are shocking and disproportionate, we compare the defendant's aggregate sentence to the aggregate maximum sentence that the circuit court could have lawfully imposed. *See id.*, ¶48. Here, Winfield faced a possible twenty-nine and one-half years of imprisonment for a series of vicious and dangerous crimes. The aggregate

sentence of sixteen and one-half years of imprisonment that he received was far below the aggregate statutory maximum, and therefore is not grossly disproportionate to the severity of his offenses. For all the foregoing reasons, we affirm.

*By the Court.*—Judgments and orders affirmed.

This opinion will not be published. *See* WIS. STAT RULE 809.23(1)(b)5. (2017-18).